WILLIAM REED ET AL. V. STATE OF NEBRASKA.

FILED NOVEMBER 6, 1902. NO. 12,606.

1. Criminal Case: Issue: Objection. The objection that the issue
   in a criminal case was not formally made up before trial must
   be first raised in the district court.

2. Assignment of Error. Rulings of the trial court not alleged as
   error in the petition in error will not be reviewed.

3. Motion for New Trial An Entirety. A motion for a new trial is
   properly dealt with as an entirety. If it can not be sustained
   in the form in which it is presented, it is not error to over-
   rule it.

4. **Instruction.** It is not error for the court in a criminal case to say to the jury as part of its charge: "You are not at liberty to disbelieve as jurors if from all the evidence you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered."*

5. ————. The giving of an instruction which is an inaccurate statement of the law is not reversible error if it is immediately withdrawn and a proper instruction given in its stead.

6. **Request for Instruction.** A request for an instruction to the effect that defendants should be acquitted if there is evidence supporting any theory of their innocence is rightly refused.

7. **Evidence of Innocence.** The fact that the defendant in a criminal case stood his ground until an accusation was lodged against him, is not, under all circumstances, evidence of innocence.

8. **Cross-Examination:** TERM IN REFORMATORY INSTITUTION. Where a defendant in a criminal case was asked on cross-examination whether he did not serve a term in a reformatory institution, and an objection to the question was sustained and the jury directed to disregard it, *held*, that the incident was too trivial to exert any influence in the decision of the case.

9. **Professional Enthusiasm:** ARGUMENT. While considerable allowance is made for professional enthusiasm in the argument of a criminal case, it is never permissible to ground an appeal for conviction upon facts not given in evidence at the trial.

10. **Personal Belief in Defendant's Guilt.** It is highly improper for the prosecuting attorney in a criminal case to declare to the jury his personal belief in defendant's guilt, unless such belief is given as a deduction from the evidence.

11. **Error:** BURDEN. Under the rule that error must affirmatively appear, the burden is on the complaining party to show that an assertion of personal belief by counsel for the opposing party was not given as a deduction from the evidence.

12. **Misconduct of Counsel:** EXCEPTION. A party desiring to take advantage of the misconduct of opposing counsel in the argument of a case should seasonably object to the remarks complained of, and then enter an exception if the court rule adversely or refuse to make a ruling.

13. **Verdict:** WORTH OF A DOLLAR: JUDICIAL NOTICE. It is not necessary that a jury in a criminal case should in their verdict fix the value of money stolen or embezzled. Courts will take judicial notice of the worth of a dollar.

14. **Preliminary Examination:** PLEA IN ABATEMENT. Objection by

*Willis v. State*, 43 Nebr., 102; *Barney v. State*, 49 Nebr., 515; *Savary v. State*, 62 Nebr., 166, 173.

an accused on the ground that there has been no preliminary examination for the crime charged should be by a plea in abatement. *Cowan v. State,* 22 Nebr., 519.

15. **Witness:** Record of Conviction. For the purpose of lessening the credibility of a witness a record of his conviction of a felony may be given in evidence; but such record is not conclusive, and the witness may show, notwithstanding the record, that he was in fact innocent.

16. **Evidence:** Verdict. Evidence examined and found sufficient to support the verdict.

Error from the district court for Douglas county. Tried below before Baxter, J. *Affirmed.*

*Macfarland & May,* for plaintiffs in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

Sullivan, C. J.

In this case we reach the conclusion, though with some doubt and hesitation, that there was before the jury sufficient evidence to warrant the verdict rendered. The defendants, William Reed and Reed Yates, were tried in Douglas county upon an information charging robbery, and were found guilty of larceny from the person. The testimony of the principal witnesses on both sides is far from satisfactory; much of it is extremely improbable and some of it altogether incredible. The conceded facts are these: On Friday afternoon, December 27, 1901, the complaining witness, Henry Bigel, an inexperienced and stupid old man, went down from Wisner to Omaha and put up at the City Hotel. The next morning after breakfast he went out and visited some of the saloons in the neighborhood. He seems to have imbibed rather freely and by two o'clock p. m. was considerably exhilarated, but not quite drunk. About this time he went into the saloon kept by defendants and ordered drinks for himself, William Carter and one or two other persons who were standing around. When called upon to settle his bill, which

was 65 cents, he said he had no money with him, but had some in his trunk at the Webster street depot. It was then arranged that Carter and Reed should go with him to the station and bring the trunk back. Who suggested this arrangement does not appear, but it was satisfactory to all concerned and was at once carried out. When the trunk was brought to the saloon it was set down in an adjoining room and opened in the presence of Reed and Carter. At the bottom was found an old rubber boot, from which Bigel extracted $280 in bills. He put $275 in his vest pocket and handed Reed Yates $5 for the purpose of paying his account at the bar. The change was returned to him and he then, after treating everybody in the saloon, paid Reed and Carter 75 cents each for their services. Beyond this point the evidence is conflicting. The testimony of Bigel is that he was robbed and beaten by the defendants and then thrown into the street. This also is Carter's version of the affair. On the other hand, the testimony of the defendants and their witnesses is to the effect that Bigel was neither robbed, beaten, nor ejected, but that he continued to drink until he fell into a drunken stupor at a table in one corner of the room, where he remained until evening. Evidently the jury, while believing that Bigel lost his money in the saloon, regarded the story of the robbery as incredible and rejected it altogether. Their conclusion was that Reed and Yates got the money, but got it by theft instead of robbery. Defendants contend that this conclusion does not rest upon any legal evidence, but we think it does. They either induced, encouraged or permitted the old man to bring his trunk to their saloon, knowing that it contained money; and this of itself was a criminating circumstance. With knowledge of the fact that he had a large amount of money on his person, they furnished him intoxicants, until, according to their own testimony, his senses were benumbed to such an extent that he could neither perceive the dangers to which he was exposed nor guard against them. Their conduct was the conduct of conscienceless men; it was so reprehensible and

·wicked as to suggest the probability that it was inspired by a criminal motive. Worthy of consideration, too, is the circumstance that Carter and the defendants were the only persons who knew Bigel had money on his person. It is intimated by counsel that Carter, who is apparently a disreputable character, may have, unknown to defendants, committed the crime. That is possible, but it is not probable. He could hardly have taken Bigel's money without being detected. He may be guilty, but that does not imply that defendants are innocent. After a careful reading of all the evidence we are disposed to believe that the defendants committed the theft and that Carter had knowledge of it and shared in the proceeds.

It is contended that William Reed was not arraigned and did not plead to the information, and that there was, therefore, as to h'm, no issue presented for trial. This point is technical, and the decision of it may properly rest upon technical grounds. The objection that the issue submitted to the jury was not formally made up was not raised in the trial court and consequently can not be considered here. Another answer to counsel's argument is that the motion for a new trial being the joint motion of both defendants, was rightly dealt with as an entirety. *Dunn v. Gibson,* 9 Nebr., 513; *Long v. Clapp,* 15 Nebr., 417; *Dutcher v. State,* 16 Nebr., 30.

The eighth paragraph of the court's charge was excepted to and is, in the brief of defendants' counsel, subjected to severe animadversion. The instruction, which is an elaborate definition of a reasonable doubt, has been frequently challenged in this court, but never condemned. The giving of it was not reversible error.

There is a general complaint against other instructions, but we discover nothing in them that we think ought to have been omitted. Considered as a whole, the charge is an exceptionally good one. It is claimed that the court erred in giving instruction No. 1 requested by the state. This instruction was to the effect that a police officer might, without a warrant, arrest any person suspected,

upon reasonable grounds, of being guilty of a felony. This was not an accurate statement of the law, but it was afterwards withdrawn and a proper instruction given in its stead. There was, we think, no special reason for giving either the original or substituted instruction, and we are not able to see how either could have influenced the action of the jury in the slightest degree.

Defendants requested the court to charge (1) that they should be acquitted if any theory of their innocence was supported by evidence; and (2) that the fact that they made no attempt to escape should be considered as evidence of innocence. Both requests were rightly refused. The proposition embodied in the first is obviously unsound, and with respect to the second it is only necessary to remark that when defendants learned that they were under suspicion the opportunity to escape was gone.

Another reason advanced for a reversal of the judgment is that the deputy county attorney was guilty of prejudicial misconduct. One of the acts of alleged misconduct consisted in asking Yates, while on the witness stand in his own behalf, whether he had not served a term in the reform school. This question was not answered. An objection to it was sustained and the jury directed to disregard it. In our opinion, the incident was too trivial to be counted as a possible factor in the decision of the case. A more serious question arises out of an expression used by the public prosecutor in his closing argument to the jury. In the course of his remarks he avouched his faith in the state's case by declaring that he believed the defendants guilty and that he hoped God would send lightning from heaven and strike him dead if he did not so believe. Considerable allowance is made for professional enthusiasm even in criminal cases, but it is not permissible to ground an appeal for conviction upon facts not given in evidence at the trial. We do not attach much importance to the offer of counsel to test the truth of his statement by ordeal. What he said in that behalf had no real significance; it was a mere rhetorical flourish. Calling spirits

from the "vasty deep" or levin from the sky is, in this materialistic age, a perfectly harmless diversion, for however vehement the call may be, no answer is expected. But an assertion by the public prosecutor of his personal belief that an accused person is guilty as charged, may, in a doubtful case, tell decisively in favor of the state, and, unless the belief is given as a deduction from the evidence, is, in the opinion of able courts, sufficient reason for reversing a conviction. In the present case, however, it does not affirmatively appear that counsel's assertion was not based entirely upon the evidence. From the record before us we are inclined to think it was. At any rate we are not able to say that the error alleged is established. The court's attention was not directed to the remark at the time it was made and it seems quite probable that this would have been done if it was regarded as unfair or unwarranted. It could hardly be made available as error if permitted to pass unchallenged. The rule upon this subject is thus stated in *Chicago, B. & Q. R. Co. v. Kellogg,* 55 Nebr., 748: "A party desiring to take advantage of the misconduct of opposing counsel in the argument of a case should seasonably object to the remarks complained of and then enter an exception if the court rule adversely or refuse to make a ruling."

Another ground upon which defendants claim a reversal of the judgment is that the jury did not fix the value of the money stolen. The verdict states that defendants are guilty "of larceny from the person to the amount of $275." This was sufficient. It is not necessary for a jury in any case to fix the value or worth of a dollar; judges, as well as other people, know what it is. *Bartley v. State,* 53 Nebr., 310. Courts take judicial notice of whatever is generally known within the limits of their jurisdictions.

It is said that the court erred in putting the defendants upon trial without a preliminary examination. This point was first raised after the jury had been sworn to try the case. It was then too late to consider it. It should have been presented by plea in abatement. *Cowan v. State,* 22

Nebr., 519; *Hill v. State,* 42 Nebr., 503; *Whitner v. State,* 46 Nebr., 144.

A further contention of counsel for defendants is that the court erred in permitting Carter, who was a witness for the state, to testify on redirect examination that he was not guilty of an offense for which he had served a term in the penitentiary. In our opinion, the ruling was right. Carter was not a party to the action and the judgment against him was not an estoppel. At the common law conviction of an odious crime was a disqualification. It may now be considered only for the purpose of lessening the credibility of a witness. It was not, it seems, the fact of guilt that worked the disqualification, but only the sentence, based upon a judicial confession or the verdict of a jury. 1 Greenleaf, Evidence, sec. 375; *People v. Herrick,* 13 Johns. [N. Y.], 82. One might admit that he was a felon without forfeiting the right to testify in court. The record of a conviction is now evidence of guilt and may be used to impeach a witness; but it is not conclusive evidence. It has the effect which the statute gives it and no other or greater effect. But for section 330 of the Code of Civil Procedure it would not be admissible for any purpose. *Sims v. Sims,* 75 N. Y., 466, 472.

Other questions discussed by counsel are manifestly without merit, or else not raised by the petition in error. The judgment is

AFFIRMED.