PATRICK WAMSLEY, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

106 N. W. 2d 22

Filed November 18, 1960. No. 34764.

*Beatty, Clarke, Murphy & Morgan, Donald W. Pederson, Frank E. Piccolo, Jr.,* and *James E. Schneider,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Bernard L. Packett,* for defendant in error.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a prosecution for statutory rape against the defendant, Patrick Wamsley. The jury returned a verdict of guilty and the defendant was sentenced by the trial court to serve a term of 12 years in the State Penitentiary. The defendant seeks a review in this court by petition in error.

The information charged that the defendant, a male person over the age of 18 years, did on April 3, 1959, unlawfully and feloniously assault Melba Baker, a female child of the age of 15 years and not previously unchaste, and did unlawfully and feloniously carnally know and abuse the said Melba Baker. The charge was made pursuant to section 28-408, R. R. S. 1943.

The prosecutrix was born on August 11, 1943. Consequently she was 15 years and 7 months old on April 3, 1959, the date of the alleged offense. The evidence is undisputed that prosecutrix had sexual intercourse with defendant and four other boys on the night of April 3, 1959. All were more than 18 and less than 21 years of age. The four boys will be referred to as Sullivan, Faulkner, T. Herrod, and G. Herrod.

The evidence shows that a few days prior to April 3, 1959, Sullivan and Faulkner saw prosecutrix walking along a street in North Platte. They drove their automobile to the curb and asked her if she wanted to go for a ride and she declined to go with them. She did not know the boys and they did not know her. On a following Saturday the same two boys again saw prosecutrix

walking along a street and they again accosted her and asked her to go for a ride and get a bottle of pop. She told them that she had to go home and could not go with them. She told them who she was and Faulkner told her who he was. Faulkner asked for a date sometime and she said: "All right, if you want to call." She gave Faulkner her home address and telephone number. A few days later Faulkner called her to go for a coke and she stated she could not go because her mother was sick. Faulkner called again on April 3, 1959, and asked her to go to the show with him. After obtaining her mother's consent she accepted his invitation and agreed that he would call for her at 7:30 that evening.

The prosecutrix left with Faulkner in his car at the appointed hour. They went to a filling station where Sullivan, T. Herrod, and a brother of the latter not involved in this litigation entered the car. The brother of T. Herrod was taken home and the remainder of the group went to get a root beer. Thereafter they decided to buy some beer and drove back to the Herrod home to get G. Herrod to make the purchase for them. They saw defendant's car driving away from the Herrod home and they honked their car horn to get his attention. Defendant stopped and Faulkner's car was driven along side. Defendant and G. Herrod were in the car. The latter agreed to buy the beer and agreed to bring it to the sand pit south of the city. Defendant got into the Faulkner car and the group drove to the sand pit to await the arrival of G. Herrod with the beer. Within a few minutes G. Herrod arrived with four six-packs of beer which were placed in the Faulkner car. All except prosecutrix began drinking beer. Faulkner began to "neck" and "paw" the girl in the presence of the others. Admittedly Faulkner was having no success and an arrangement was made for the others to leave the defendant and prosecutrix alone in the car. Prosecutrix testified to defendant's efforts to have sex-

ual intercourse with her. She told him she wanted to go home. He persisted and she drew a small pocket knife which she held at his throat. Defendant admits that he grabbed her by the hair and took the knife from her. Defendant proceeded to have sexual intercourse with prosecutrix, which he avers was with her full cooperation and consent which she denies. Defendant left the car and Sullivan, Faulkner, G. Herrod, and T. Herrod in turn entered the car and had sexual intercourse with the prosecutrix. Sullivan then returned to the car and had sexual intercourse with her a second time. A third car containing two boys came and left very shortly before the end of the episode. Prosecutrix heard them come and made no outcry. All of the boys testified that prosecutrix was willing and cooperative, and offered no resistance. Prosecutrix does not deny that she did not physically resist after the knife incident with the defendant.

Defendant left the scene shortly after his sexual act with prosecutrix. G. Herrod also left, probably in the third car which had arrived near the end of the episode. Sullivan, Faulkner, T. Herrod, and prosecutrix drove around for a while and then went to obtain food and coffee. Thereafter the prosecutrix was taken home at about 12 midnight.

When prosecutrix arrived home her parents had retired for the night. She did not awaken them. She arose at 2 a.m., and went with her father to assist him in doing janitorial work at two local restaurants. She made no complaint to her father. Upon returning home at about 6:30 a.m., she awakened her mother and informed her of the previous night's events. She was taken to a doctor, and the sheriff was informed. Prosecutrix testified that her clothes were torn and that she observed blood on her underclothing and in the bed where she had slept. The five boys involved testified as to the clothing they were wearing at the time and that there was no blood on them. Prosecutrix testified

positively that she had never had sexual intercourse with any man previous to that time. The doctor who examined the girl testified that from the findings of the examination it was his opinion that the prosecutrix was chaste prior to the event on April 3, 1959. The defendant called a qualified physician who gave it as his opinion under the assumed facts which were supported by the evidence that prosecutrix was not previously chaste.

All of the elements of the crime charged were admitted by the defendant except the previous chastity of the prosecutrix. The time and place of the act, the identity and ages of the parties, and the perpetration of the acts of sexual intercourse are admitted by the defendant and the four boys with him. The only controverted issue was whether or not the prosecutrix was chaste prior to the time of the offense charged. The evidence on this issue was in conflict and presented a jury question, which the jury resolved in favor of the State.

The defendant assigns 25 errors, which he asserts deprive him of a fair and impartial trial. We shall give each of them the attention it deserves, considering the nature of the case and the contents of the record before us.

The defendant contends that the evidence is insufficient to prove the previous chastity of the prosecutrix beyond a reasonable doubt and that the trial court erred in not directing a verdict for the defendant and in not sustaining his motion for a new trial on that ground. We point out that the prosecutrix testified that she had never previously engaged in sexual intercourse. It is true that the credibility of the prosecutrix on this vital point was impeached by her sworn testimony at the preliminary hearing in the county court, which impeaching evidence will be more particularly discussed in connection with another point. Her evidence, however, was corroborated by the evidence of the examining physician. While there was substantial evidence to support the contention of the defendant that

prosecutrix was not previously chaste, it presented a question of fact to be determined by the jury. We find no merit in defendant's contention on this point.

The defendant contends that the trial court erred in refusing to declare a mistrial requested by the defendant following several hysterical and emotional outbursts, demonstrations, and breakdowns by prosecutrix on the witness stand. It is contended that such conduct and the recesses and continuances granted by the trial court as a result thereof had the effect of producing the utmost sympathy for the prosecutrix in the minds of the jurors and to arouse the jury to extreme passion and prejudice against the defendant. The record shows that several recesses of the court were taken for the purpose of permitting the prosecutrix to compose herself, and on one occasion the court was recessed from approximately 11 a.m. to 1:30 p.m. for such purpose, and at 1:30 p.m. court was recessed until 9:30 the next morning for the same reason.

The evidence shows that the prosecutrix did on several occasions during her cross-examination become emotional and hysterical, and that the trial court granted several recesses of the court as heretofore stated to enable her to compose herself in order that she could continue as a witness. There is nothing in the record as to what she said during these hysterical outbursts. There is evidence that after she retired from the courtroom such outbursts, at least on one occasion, were heard throughout the floor of the courthouse on which the courtroom is located. The record is not clear that this was within hearing of the jury. Counsel for the defendant objected to the continuance from 11 a.m. to 1:30 p.m. and from 1:30 p.m. to 9:30 the following morning and moved for a mistrial on the ground that the defendant was prejudiced from having a fair trial by the frequent outbursts of emotion and hysteria and the resulting recesses of the court. The motion for a mistrial was renewed when court resumed the following morn-

ing. The trial court overruled the motion for a mistrial. No admonition was directed to the jury to disregard the manifestations of emotion and hysteria, nor was the jury directed by the instructions to do so, although such an instruction was requested by the defendant. The question before this court does not appear to have been passed on in a case having any similarity to the present one.

In cases such as the one before us, manifestations of emotion and hysteria are not unnatural or unusual. No contention is here made that such manifestations were feigned and not spontaneous on the part of the prosecutrix. Whether or not such manifestations are prejudicial to the fundamental right of a defendant to a fair and impartial trial has been before other courts, with results that are not in all respects consistent. These cases are collected in an annotation appearing in 46 A. L. R. 2d 949.

We think the proper rule is that, where there are outbursts of emotion or hysteria in the course of the trial, it is within the sound discretion of the trial court to deal with them in such a manner as to best preserve the judicial atmosphere and insure a fair and impartial trial for the defendant. It necessarily follows that in the absence of an abuse of discretion an appellate court will not interfere with the rulings of the trial court thereon, such court having a much better knowledge of what occurred and the extent of the passion and prejudice that resulted therefrom than this court might glean from the printed record. We find no error in the action of the trial court in granting the recesses and continuances about which the defendant complains. It is true that the trial court failed to admonish the jury to disregard the manifestations of emotion and hysteria on the part of the prosecutrix, a matter which we shall consider in connection with another point raised in the case.

As a part of his motion for a mistrial the defendant

by his counsel stated that about 9:30 a.m. on the third day of the trial the father of the prosecutrix, during her cross-examination, arose from the audience and said "That's enough," and proceeded directly to the witness stand and assisted the prosecutrix therefrom. The State does not question the correctness of this statement. The trial court took no action. There is nothing in this record to indicate that the trial court reprimanded the father of the prosecutrix for his conduct, took any steps to prevent its recurrence, or admonished the jury to disregard the incident. While no objection was made at the very time the incident occurred, it was raised in the motion for a mistrial approximately 1½ hours later. The defendant offered an instruction dealing with the subject, which was refused.

The responsibility for conducting a trial in an orderly and proper manner for the purpose of insuring a fair and impartial trial for one charged with crime rests with the trial court, and it is vested with a wide discretion in so doing. In the absence of a clear showing that the trial court failed to control the situation and permitted the trial to get so out of hand as to necessarily have aroused passion and prejudice against the accused, the rulings of the court will not ordinarily be disturbed. But where a person injects himself into the trial as did the father of the prosecutrix, the duty of the court arises to act seasonably to control the situation by reprimanding the offender, by taking steps to prevent its recurrence, and by admonishing the jury to disregard the matter in order to dispel any passion or prejudice arising from it. In this instance none of these things were done. The trial court failed in its responsibility to assert the powers of the court in dealing with this intrusion upon the judicial process and in permitting the prejudice to the defendant arising therefrom to remain unalleviated. Wever v. State, 121 Neb. 816, 238 N. W. 736. Whether or not the matter was timely raised, it is proper to be considered along with other

errors appearing in the record, together with the general conduct of the trial, in determining if the accused had a fair and impartial trial, when assigned as error in the motion for a new trial timely filed.

The record shows that several recesses of the court were taken to permit the prosecutrix to compose herself as hereinbefore stated. A motion for a mistrial was made at the close of the evidence on the basis that the many manifestations of emotion and hysteria had the effect of arousing great sympathy for the prosecutrix and passion and prejudice against the defendant to such an extent that a fair and impartial trial could not be had. We do not here determine that a mistrial should have been granted. It was the duty of the court, however, to admonish the jury to disregard all incidents of the trial that tended to create sympathy for prosecutrix and prejudice to the defendant, and to further admonish the jury that it was the duty of the jury to try the case solely on the evidence properly before it and the instructions of the court, both by oral admonitions at seasonable times and by written instructions when properly requested. An instruction was requested in this case admonishing the jury to disregard the manifestations of emotion and hysteria by the prosecutrix, and that the jury should disregard sympathy for the prosecutrix and any prejudice toward the defendant, and try the case solely on the evidence.

The primary issue in the case is whether or not the prosecutrix was chaste. There is evidence by a physician that in his opinion she was not. The five boys involved testified to facts which clearly indicate that prosecutrix was not previously chaste. The prosecutrix testified positively that she had never previously had intercourse with a man. Her credibility was impeached by her own sworn testimony given at the preliminary hearing. The impeaching evidence not only went to her credibility generally but to the truth of her statement that she was previously chaste. The

nature of this impeaching evidence is such that we do not choose to repeat it here. It will be sufficient for us to say that it is not the evidence that could reasonably be expected from a poor innocent little girl, as the attorneys for the State proclaimed her to be in their arguments to the jury. It could reasonably be inferred from this sworn testimony given at the preliminary hearing that prosecutrix was not previously chaste. While the issue of chastity was for the jury, we point out that the manifestations of emotion and hysteria by the prosecutrix and the interruption of the trial and the escorting of prosecutrix from the witness stand by her father tended to create an atmosphere of sympathy for the prosecutrix and of passion and prejudice to the defendant which the trial court made no effort to minimize.

In addition to the foregoing the county attorney in his opening argument to the jury made the following statement: "And he (defense counsel) asked her point blank about her chastity, and she come back at him that she had never had intercourse before, and as I stand here, I heartily believe that with all my heart and soul, the way that she screamed, 'It isn't the truth,' because a little girl is not going to take the abuses and go up and take the stand in this case if she wasn't chaste," etc. The expression of the personal opinion of the prosecutor in a criminal prosecution, not based on the evidence, in arguing the case to the jury has frequently been condemned. Reed v. State, 66 Neb. 184, 92 N. W. 321; Olsen v. State, 113 Neb. 69, 201 N. W. 969; Balis v. State, 137 Neb. 835, 291 N. W. 477; Roberts v. State, 145 Neb. 658, 17 N. W. 2d 666; Wilson v. State, 170 Neb. 494, 103 N. W. 2d 258.

With the close issue of fact in this case as to the previous chastity of the prosecutrix, the personal opinion of the county attorney could well have supplied the jury with the motivating factor that tipped the scales in favor of the State. Objection was made at the close of the county attorney's opening argument. The objec-

tion was overruled without an admonition to the jury to disregard it, the least that the trial court could have done to alleviate the prejudicial effect of the statement.

The nature of the instant case is such that sympathy for the prosecutrix and prejudice to the defendant could easily be engendered in the minds of jurors. In such a case every precaution should be taken to insure a fair and impartial trial, however guilty the defendant appears to be. It is the duty of the trial court by every means at his command to see to it that a fair and impartial trial is had and that the verdict rendered is based on a dispassionate consideration of the evidence. In the instant case the defendant moved for a mistrial at the close of all the evidence on the ground that the incidents herein discussed precluded such a trial. This was asserted in his motion for a new trial as a basis for a new trial. Whether the motion for a mistrial was a prerequisite to its assertion in the motion for a new trial, we do not here determine. We do find that the trial court erred in not awarding the defendant a new trial.

It is clear from an examination of the whole record that the manifestations of emotion and hysteria on the part of the prosecutrix, and the improper conduct of the county attorney in expressing his personal opinions in his argument to the jury, had the cumulative effect of charging the atmosphere of the trial with great sympathy for the prosecutrix and with extreme hostility toward the defendant. It seems clear to us that the recited events occurring at the trial had the effect, in the aggregate, of creating such an atmosphere of hostility toward the defendant that it tended to make impossible a dispassionate consideration of the evidence by the jury. The great sympathy for the prosecutrix created by the cited incidents and the resulting hostility toward the defendant could have been alleviated by rebukes to those who violated established rules of conduct, by admonishing the jury orally or by written instruction to disregard such incidents occurring at the trial, by

reprimanding the county attorney for expressing his personal opinions not inferred from the evidence, and by admonishing the jury to disregard such irregularities and return a dispassionate verdict based solely on the evidence before it. People v. Brown, 81 Cal. App. 226, 253 P. 735.

It is true that one or more of the recited incidents might not, standing alone, constitute prejudicial error requiring a new trial, but their cumulative effect was to deprive the defendant of his constitutional right to a public trial by an impartial jury.

There is a paucity of cases in this jurisdiction dealing with accumulative error as a ground for a new trial where one or more of such errors, standing alone, may not constitute reversible error. But such question has arisen in other jurisdictions to which we shall refer.

In 24 C. J. S., Criminal Law, § 1887, p. 840, it is said: "The doctrine of harmless error does not apply where accused has been deprived of a substantial right, and it will not be extended to such an extent as to deprive accused of a fair trial, or a trial on the merits. One who is accused of crime is entitled to an impartial trial, and where the record shows prejudicial irregularities, a conviction will be reversed." See, also, People v. Aragon, 154 Cal. App. 2d 646, 316 P. 2d 370.

In State v. Gossett, 117 S. C. 76, 108 S. E. 290, 16 A. L. R. 1299, the court said: "The law has been broken and demands prompt punishment of the offender; the law guarantees to the accused a fair trial; the public interest is as much involved in the sanctity of this guaranty as in the swift retribution which should follow crime. A fair trial means a trial before an impartial Judge, an honest jury, and in an atmosphere of judicial calm. It requires a wise, fearless, and impartial mind to harmonize these elements of the public interest, lest in its haste to deal a blow the law may perpetrate a judicial wrong." In McMahan v. State, 96 Okl. Cr. 176, 251 P. 2d 204, the court said: "A fair trial is a legal trial, or

one conducted in all material things in substantial conformity to law." We agree with these general definitions of a fair trial. It implies a trial with sympathy for one party or hostility toward the other being kept at a minimum at all stages of the trial in order that a fair and impartial verdict may be returned under the evidence.

In Stagemeyer v. State, 133 Neb. 9, 273 N. W. 824, we approved the following statement of the law: " 'An error which prevents proper consideration by the jury of the only question relied upon by the defendant is substantial, not technical, and we have no right to disregard it though we may approve of the verdict.' " See, also, People v. Rongetti, 338 Ill. 56, 170 N. E. 14.

In State v. Collins, 246 Iowa 989, 69 N. W. 2d 31, the court said: "But it is fair to say that in a criminal case where the error pertains to a matter calculated to arouse prejudice against defendant, we should be cautious in holding it to be nonprejudicial. 'Whether the error in a given case shall be regarded as harmless on appeal may often depend on the circumstances of the particular case rather than on any definite rules of law.' 24 C. J. S., Criminal Law, section 1887, page 841. And 'errors which might otherwise be regarded as harmless and unimportant may not be so considered in close cases.' "

In State v. Dolliver, 150 Minn. 155, 184 N. W. 848, the court stated: "And the rule is that, where any one of several errors assigned would not in itself be sufficient to warrant a reversal, yet, if all of them taken together justify the conclusion that defendant was not accorded a fair trial, it becomes the duty of this court to reverse." See, also, United States v. Donnelly, 179 F. 2d 227; Ellis v. State, 86 Fla. 155, 97 So. 285.

In State v. Toloff, 123 Wash. 92, 211 P. 745, the court stated the rule as follows: "Many of these assignments of error might not, in themselves, if standing alone, be sufficiently prejudicial to entitle the appellant to a new

trial, but the sum total of them was exceedingly prejudicial, especially in view of the fact that the testimony tending to establish his guilt, although it presented a small basis for the jury to determine that he was guilty, was of such a feeble and unpersuasive character that we are of the opinion that it must leave, in the minds of a jury, a reasonable doubt, unless the jury was influenced by matters other than those appearing in the evidence."

In State v. Gevrez, 61 Ariz. 296, 148 P. 2d 829, the court said: "We cannot, however, find fault with the mother of the deceased, but we do say the laxness of the court in permitting her to remain so near the jury, and her deportment while there, were very prejudicial to the rights of appellant and should not have been allowed. * * * We hold that the defendant herein did not have a fair and impartial trial."

In State v. Long, 127 Mont. 523, 268 P. 2d 390, the court said: "Whatever the status of a defendant in a criminal case may be and whatever be the nature of the crime with which he is charged, each and all are entitled to the same fair trial guaranteed by our Constitution. The Constitution makes no distinction between defendants but treats all alike, as must this court, whose duty it is to see that defendants in criminal cases brought before us are accorded a fair trial."

We are of the opinion, as the result of our examination of this record shows, that defendant has not had a fair and impartial trial according to law and the established rules of criminal procedure to which every person, whether guilty or innocent, is entitled. The judgment of the district court is therefore reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.