Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/17/2023 09:07 AM CST

State of Nebraska, appellee, v.
Dap Tuak Dap, appellant.
___ N.W.2d ___

Filed November 17, 2023.    No. S-22-810.

1. **Trial: Convictions: Evidence: Appeal and Error.** An appellate court will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. In making this determination, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, because these are within a fact finder's province for disposition. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Criminal Law: Motions for New Trial: Appeal and Error.** In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.

3. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

4. \_\_\_\_: \_\_\_\_. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

5. **Evidence: Circumstantial Evidence: Proof: Words and Phrases.** There are two kinds of evidence, direct and circumstantial. Direct evidence directly proves the fact in dispute without inference or

presumption. Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred.

6. **Circumstantial Evidence: Proof.** Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact.

7. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

8. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

10. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

11. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

12. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

13. \_\_\_\_: \_\_\_\_. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

14. \_\_\_\_: \_\_\_\_. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for

counsel's deficient performance, the result of the proceeding would have been different.

15. **Trial: Evidence: Presumptions: Appeal and Error.** In a case tried to the court without a jury, there is a presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant, and an appellate court will not overturn such a decision where there is sufficient material, competent, and relevant evidence to sustain the judgment.

Appeal from the District Court for Hall County: Patrick M. Lee, Judge. Affirmed.

J.D. Sabott, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, Erin E. Tangeman, and Matthew Lewis for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Dap Tuak Dap challenges the sufficiency of the evidence to sustain his convictions for possession of a firearm by a prohibited person and unlawful discharge of a firearm, the overruling of his motion for a new trial, and the effectiveness of trial counsel. His arguments largely attack the State's reliance on circumstantial evidence. Because we find no reversible error or abuse of discretion, we affirm.

## II. BACKGROUND

Shortly after midnight on January 2, 2022, Tara Fugate heard loud noises and screaming outside her apartment. Fugate's apartment is near the stairway on the second floor of a two-story apartment building. The outdoor stairway, located at one end of the building, provides access to the second floor. The stairs go up halfway to a landing, and then the other half of the stairs leads to the second level.

As Fugate moved to close her window drapes, she heard a gunshot. Fugate looked outside and saw an individual, whom she later identified as Dap, "screaming at the other ones." According to Fugate, Dap was standing on the landing and the others were in an apartment "catty-corner from [Fugate's front] door." Fugate saw "an object" in Dap's hands, but she did not know what it was. She testified: "Could have been a cell phone. Could have been a can of pop." It was dark outside, and although Fugate did not see the object's color, she testified that it "flickered in the darkness." Fugate heard Dap say, "[expletive] you" and either "next time I won't miss you" or "next time I will hit you."

Fugate testified that Dap "ran up onto the landing and then up the steps" and entered the apartment where the person at whom he was screaming was located. After Dap ran into the apartment, Fugate heard another sound similar to a gunshot; however, it was "more muffled" than the first gunshot sound. Fugate explained that it was "obvious[]" the first shot was outside and that the second shot was "in a closed encounter."

Police officers arrived at the apartment building, and Dap refused to cooperate with their orders. Officer Justin Roehrich testified that as the officers tried to get Dap to descend the stairs, Roehrich "noticed a glistening on the concrete right next to the handrail of the stairway." Roehrich discovered a shell casing for a .22-caliber bullet. He explained that a shell casing will generally land within 5 feet of where a gun is fired.

After Roehrich spoke with Fugate, he obtained a search warrant. Roehrich and other officers then searched the apartment that Fugate saw Dap enter. In the living room of that apartment, they found a wallet containing identification belonging to Dap and a .22-caliber shell casing located nearby. Roehrich observed a hole in the living room ceiling that was consistent with a .22-caliber bullet. Another officer climbed into the attic to look for the slug. That officer located the point where the bullet entered the attic and followed its

trajectory to a rafter that sustained damage. He did not locate the metal portion of that round. Likewise, no gun was found.

After a bench trial, the court convicted Dap of possession of a deadly weapon (firearm) by a prohibited person, unlawful discharge of a firearm, use of a deadly weapon to commit a felony, and obstructing a peace officer.

Dap moved for a new trial. He alleged that the verdict for possession of a firearm by a prohibited person was not sustained by sufficient evidence and was contrary to law, that an error of law occurred at trial, and that there was an irregularity in an order of the court. The court overruled the motion.

Following sentencing, Dap filed a timely appeal. We moved the appeal to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## III. ASSIGNMENTS OF ERROR

Dap assigns six errors, which we have reordered and consolidated into four categories. First, Dap alleges that the evidence was insufficient to support the convictions under Neb. Rev. Stat. §§ 28-1206 (Cum. Supp. 2022) and 28-1212.02 (Reissue 2016). Second, he contends that the court abused its discretion in denying his motion for a new trial. Third, Dap alleges that he received ineffective assistance of trial counsel due to (1) counsel's failure to investigate the State's allegations by failing to (a) communicate and adequately review discovery with Dap, (b) conduct depositions, and (c) investigate in an attempt to develop favorable evidence; and (2) counsel's advice that Dap should not testify in his own behalf. Fourth, Dap contends that the cumulative effect of all the errors deprived him of his right to a fair trial and to due process under the 5th and 14th Amendments of the U.S. Constitution.

## IV. STANDARD OF REVIEW

[1] An appellate court will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence,

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

viewed and construed most favorably to the State, is sufficient to support that conviction. In making this determination, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, because these are within a fact finder's province for disposition. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

[2] In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.[3]

[3,4] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.[4] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[5]

## V. ANALYSIS

### 1. Sufficiency of Evidence

[5,6] Dap argues that the evidence presented at trial was insufficient to find him guilty of possession of a firearm by a prohibited person and guilty of unlawful discharge of a firearm. In resolving whether the evidence supports the convictions, we are mindful that there are two kinds of

---

[2] *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022).

[3] *State v. Allen*, 314 Neb. 663, 992 N.W.2d 712 (2023), *modified on denial of rehearing ante* p. 255, 995 N.W.2d 446.

[4] *Id*.

[5] *Id*.

evidence, direct and circumstantial.[6] Direct evidence directly proves the fact in dispute without inference or presumption.[7] Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred.[8] Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact.[9] We now turn to the two convictions challenged by Dap.

### (a) Possession of Firearm by Prohibited Person

Dap argues that the evidence was insufficient to support his conviction for possession of a firearm by a prohibited person under § 28-1206. The only element of the offense that he challenges is proof that he possessed a firearm.

Dap's argument relies on the absence of direct evidence. He highlights that no one found a gun and that Fugate did not testify that she saw him with a gun.

However, circumstantial evidence supports the conviction. Fugate heard a gunshot. She looked out the window of her apartment and saw Dap with an object in his hands. Fugate heard Dap scream something like, "[expletive] you, next time I won't miss." Law enforcement located a spent shell casing near where Fugate saw Dap standing. Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Dap possessed a gun.

### (b) Unlawful Discharge of Firearm

Dap also challenges the sufficiency of the evidence to support his conviction for unlawful discharge of a firearm. He relies on the statutory language of § 28-1212.02, making it

---

[6] *Estate of Block v. Estate of Becker*, 313 Neb. 818, 986 N.W.2d 726 (2023).

[7] *Id.*

[8] *Id.*

[9] *Id.* See, also, *State v. Thelen*, 305 Neb. 334, 940 N.W.2d 259 (2020).

a felony when a person "unlawfully and intentionally discharges a firearm at an inhabited dwelling house [or] occupied building." Dap contends that no evidence supported a finding that a shot was fired *at* a dwelling. We disagree.

The State presented evidence that two shots were fired, one outside and one inside. With respect to the shot fired outside, Dap argues that there was no evidence regarding the direction it was shot or that it entered a dwelling from the outside. Pointing to inferences that can be drawn from the evidence, the State contends it met its burden of proof. We agree with the State.

Much of the same evidence supporting the possession of a firearm conviction also supports the conviction for unlawful discharge of a firearm. Again, Fugate heard a gunshot outside and saw Dap with something in his hand. Dap was screaming at someone inside an apartment, and Fugate heard him say something like, "next time I won't miss." Officers found a spent shell casing outside where Fugate saw Dap standing. From this evidence, a reasonable fact finder could determine that Dap fired a gun at an occupant in the apartment, but missed. Viewed in the light most favorable to the State, circumstantial evidence supports the conviction.

Dap focuses on the shot fired inside the apartment and argues that it does not fit within the statutory language criminalizing the discharge of a firearm "at" a dwelling.[10] He cites to case law from other states, reasoning that a shot fired from within an inhabited building or motor vehicle is not a shot fired at a building[11] or vehicle[12] for purposes of that state's penal statute.

---

[10] See § 28-1212.02.

[11] See, *People v. Morales*, 168 Cal. App. 4th 1075, 85 Cal. Rptr. 3d 873 (2008); *People v. Stepney*, 120 Cal. App. 3d 1016, 175 Cal. Rptr. 102 (1981).

[12] See *State v. Tafoya*, 2012 NMSC 030, 285 P.3d 604 (2012).

The State, in arguing that the second shot satisfies § 28-1212.02, relies on evidence that the bullet penetrated the ceiling and struck the building's structure. Drawing from our decision in *State v. Wells*,[13] the State argues that the second shot resulted in a bullet penetrating the structure of the building beyond the wall of the apartment within which the shot was fired.

[7] Whether a firearm discharged within an occupied dwelling satisfies § 28-1212.02 is an issue we need not decide. Here, the State charged Dap with one count of unlawful discharge of a firearm and the evidence related to the shot fired outside supports the conviction. Because an appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it,[14] we need not resolve whether Dap could also be convicted based on the shot fired within the apartment.

## 2. Motion for New Trial

Dap assigns that the court abused its discretion in overruling his motion for new trial. He advances three arguments, but all lack merit.

First, Dap argues that there was not sufficient evidence to sustain the conviction for possession of a firearm by a prohibited person. But, as we determined above, circumstantial evidence supported the conviction. Accordingly, the court did not abuse its discretion in overruling the motion for a new trial on this ground.

Next, Dap contends that an error of law occurred at trial when the court failed to apply the plain meaning of § 28-1212.02. His argument is premised on his contention that discharging a gun within a dwelling does not support a crime charged under § 28-1212.02. Just as we declined to reach that question above, we need not do so here.

---

[13] *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018).

[14] *State v. Dolinar, ante* p. 257, 995 N.W.2d 18 (2023).

Finally, Dap contends that the court should have sustained his motion for a new trial because there was "an irregularity in an order of the [c]ourt"[15] based on the court's comments in making its ruling from the bench. However, these oral comments do not fit within the statutory definition of an order. An "order" is defined as "[e]very direction of a court or judge, made or entered in writing and not included in a judgment."[16]

To the extent that Dap's argument can be read to assert the comments constituted an irregularity in the proceedings, that argument also fails. Dap's argument is based on the court's remarks concerning the counts alleging possession of a firearm by a prohibited person, unlawful discharge of a firearm, and use of a deadly weapon to commit a felony. At this point, we emphasize that because a jury was waived, the court acted as the finder of fact and its statement was made in that capacity.

In explaining the court's view of the evidence, it stated that those counts were "essentially interwoven," that "it would be very difficult for [Dap] to be acquitted of one and not acquitted of the other or convicted of one and not convicted of the other," and that "[t]hey appear to be a package deal of sorts." Dap points to no authority suggesting that the judge in a bench trial is somehow precluded from commenting on the evidence.

Dap argues that the court's statement was incorrect because a fact finder could determine that he possessed a firearm but that he did not discharge it at an occupied dwelling. The court's commentary did not foreclose that possibility. Rather, the court stated that it would be "very difficult" to be convicted of one and not the other under the circumstances presented. But more importantly, the court recounted the evidence upon which it found the State met its burden on all three counts. There was nothing irregular about that. The court's

---

[15] Brief for appellant at 12.

[16] Neb. Rev. Stat. § 25-914 (Reissue 2016).

articulated conclusions regarding the weight of the evidence fell squarely within its province as the finder of fact. We conclude the court did not abuse its discretion in overruling Dap's motion for a new trial.

### 3. Ineffective Assistance of Counsel

[8] Through different counsel, Dap contends that his trial counsel provided ineffective assistance in numerous ways. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[17]

[9,10] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.[18] When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.[19]

[11] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's

---

[17] *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022).

[18] *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023).

[19] *Id.*

actions could not be justified as a part of any plausible trial strategy.[20]

[12-14] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[21] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[22] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[23] To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[24]

With these standards and general principles in place, we turn to the deficiencies alleged by Dap.

### (a) Failure to Communicate and Adequately Review Discovery

Dap faults trial counsel's failure to adequately meet and review discovery materials with him. He asserts that he repeatedly asked trial counsel for discovery materials, but that counsel only viewed discovery materials with him briefly. Dap further contends that if counsel had "provided reports" to him, he would have been in a better position to inform counsel of any inaccuracies and to explain "potential defenses and potential witnesses that could have testified to who had a gun and in which direction shots were fired from it."[25] Dap does not identify any reports that would have aided his defense,

---

[20] *Id*.

[21] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[22] *State v. Allen, supra* note 3.

[23] *Id*.

[24] *Id*.

[25] Brief for appellant at 19.

any inaccuracies that were contained therein, any potential defenses, or any potential witnesses who would have testified either that someone other than Dap possessed the gun or that it was not fired at the apartment building. Although we have some doubt regarding whether Dap sufficiently pled this claim, both parties assert that the record is insufficient to review it.

In the State's brief, it alternatively asked this court to take judicial notice of two trial court documents not contained in the appellate record. However, at oral argument, the State backed away from this request and correctly observed that it could have submitted a supplemental transcript to make these documents part of the appellate record.[26] We need not speculate whether it would ever be proper to use judicial notice to expand the appellate record on direct appeal of a criminal conviction where ineffective assistance of trial counsel is assigned. Accordingly, we accept the parties' statements that the appellate record is insufficient to review Dap's claims related to counsel's failure to adequately review discovery with him.

### (b) Failure to Conduct Depositions

Dap argues that his counsel performed deficiently by failing to depose Fugate and Roehrich. He asserts that there was no strategic reason to avoid placing key witnesses under oath prior to trial. The State responds that counsel cross-examined Fugate and Roehrich at trial and that Dap did not assign that the witnesses were not cross-examined effectively.

Dap contends that Fugate should have been deposed because she was the only witness to identify him. But he does not elaborate on how taking Fugate's deposition would have aided his case or, conversely, on how not taking her deposition harmed his case.

---

[26] See Neb. Ct. R. App. P. § 2-104(C) (rev. 2022).

Dap asserts that if Roehrich had been deposed, Dap would have learned before trial that there was another witness at the scene who was not interviewed or identified as a possible suspect. Again, Dap does not elaborate on how this information would have helped his defense. And it is unclear to whom Dap is referring: Roehrich testified about a "female that would come down and walk right by [Dap] on the stairway" and "a male" who emerged from "that apartment." And although Roehrich did not speak to this male, whom he referred to as "Michael," Roehrich testified that "they detained him." Presumably, an officer questioned the male in connection with detaining him.

There can be no doubt that Dap was aware of other witnesses at the scene. Dap does not argue that he was not there. He interacted with both the male and the female. During a preliminary hearing—held 6 months prior to trial—Roehrich testified that the female was with Dap and that other officers identified her. He further testified that "there was another male that was involved in their disturbance" and that other officers secured the scene as Roehrich tried to obtain Dap's cooperation. We conclude that this claim is insufficiently pled.

### (c) Failure to Investigate and Attempt to Develop Favorable Evidence

Dap asserts that counsel provided ineffective assistance by failing to investigate and develop evidence favorable to Dap. According to Dap, "Had trial counsel met or communicated with [Dap], they could have had meaningful conversations about the State's case against him, evaluated potential witnesses and trial strategy."[27] He contends that based on trial testimony, one or two individuals were at the apartment building but not identified or interviewed. Dap suggests that "[e]ither one of these unnamed and unspoken to witnesses may have been able to clear up issues regarding who in fact

---

[27] Brief for appellant at 18.

possessed the gun and what direction the gun was fired."[28] This appears to be directed toward the same individuals discussed above in connection with Dap's contention that counsel should have deposed Roehrich. It fails for the same reason. We conclude this claim is insufficiently pled.

### (d) Advice To Not Testify

Dap's last assignment of ineffective assistance concerns counsel's advice that Dap not testify in his own behalf. Dap asserts that he waived his right to testify because he relied on counsel's "greater knowledge and experience in trial strategy."[29] According to Dap, he would have testified that he has never owned a gun and that he did not have a gun on the night in question. The record is insufficient to address this claim.

### 4. Cumulative Effect

Finally, Dap argues that all of the errors establish that he did not receive a fair trial. Long ago, we recognized the cumulative error doctrine in the context of a criminal jury trial.[30] We explained that while one or more errors, standing alone, may not constitute reversible error, if their cumulative effect was to deprive the defendant of a fair and impartial trial, a new trial must be granted.[31]

[15] Here, Dap opted for a bench trial. In a case tried to the court without a jury, there is a presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant, and this court will not overturn such a decision where there is sufficient material, competent, and relevant evidence to sustain the judgment.[32] We have found no merit to Dap's assigned errors. His claims of

---

[28] *Id.* at 19.

[29] *Id.* at 21.

[30] See *Wamsley v. State*, 171 Neb. 197, 106 N.W.2d 22 (1960).

[31] See *id.*

[32] *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022).

ineffective assistance of counsel—which either are insufficiently pled or are unable to be addressed on direct appeal—cannot form the basis for a claim of cumulative error.[33] The cumulative error doctrine does not apply here.

## VI. CONCLUSION

We conclude that the evidence, viewed in the light most favorable to the prosecution, supported Dap's convictions for possession of a firearm by a prohibited person and for unlawful discharge of a firearm and that the court did not abuse its discretion in overruling Dap's motion for a new trial. We further conclude that Dap's allegations of ineffective assistance of counsel either are insufficiently pled or cannot be resolved on direct appeal and that the cumulative error doctrine provides no basis for relief. Accordingly, we affirm the district court's judgment.

Affirmed.

Stacy, J., participating on briefs.

---

[33] See, *id.*; *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019).