IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. BOURQUIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOHNATHAN BOURQUIN, APPELLANT.

Filed January 28, 2025.    No. A-24-349.

Appeal from the District Court for Scotts Bluff County: ANDREA D. MILLER, Judge. Affirmed as modified.

Allison M. Witcofski, of Douglas, Kelly, Ostdiek, Snyder, Ossian & Vogl, P.C., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## INTRODUCTION

Johnathan Bourquin appeals from his conviction in the district court for Scotts Bluff County of possession of methamphetamine with intent to distribute, more than 140 grams; possession of drug paraphernalia; and failure to affix a drug tax stamp. On appeal, he assigns errors related to the sufficiency of the evidence to support his convictions and the sentences imposed by the district court. He also assigns that his trial counsel was ineffective. For the reasons contained herein, we affirm as modified.

## STATEMENT OF FACTS

On September 28, 2023, Bourquin was charged by information with possession of a controlled substance (methamphetamine) with intent to distribute, more than 140 grams, a Class

- 1 -

IB felony, in violation of Neb. Rev. Stat. § 28-416(10)(a) (Cum. Supp. 2022); possession of drug paraphernalia, an infraction, in violation of Neb. Rev. Stat. § 28-441 (Cum. Supp. 2022); and failure to affix a drug tax stamp, a Class IV felony, in violation of Neb. Rev. Stat. § 77-4309 (Reissue 2018).

A jury trial was held on March 5, 2024. Four witnesses testified and numerous exhibits, including photographs and video footage taken on the day of Bourquin's arrest, were entered into evidence.

Nebraska State Patrol (NSP) investigator Craig Kumpf is a member of the Western Intelligence Narcotics Group Drug Task Force. On the evening of August 23, 2023, Kumpf was surveilling a vehicle in which Bourquin was a passenger as it approached a known drug house. Bourquin and the driver exited the vehicle and then spent several hours inside the drug house.

When Kumpf observed Bourquin and the driver leave the house and get back into the vehicle, he relayed the information to NSP trooper Michael Kleich. He also informed Kleich that both Bourquin and the driver had suspended licenses and the vehicle's rear window was broken; violations which could serve as the basis for a traffic stop.

Kleich testified that he was informed by Kumpf to be on the lookout for a vehicle with a broken rear window "with intel of possible methamphetamine inside the car." Kleich located the vehicle and initiated a traffic stop. Bourquin was identified as the passenger in the vehicle.

NSP corporal Nathan Genoways arrived on the scene shortly after the traffic stop was initiated by Kleich. Genoways asked Bourquin to step out of the vehicle and Genoways performed a pat-down search of Bourquin, during which Bourquin admitted that he had a pipe on his person. Genoways placed Bourquin into handcuffs and did not complete the pat-down search. While Bourquin was handcuffed, another officer completed the pat-down search and removed the pipe from Bourquin's shorts pocket. No methamphetamine was found on Bourquin's person during the pat-down search. The officer then placed Bourquin in the back of Genoways' patrol car.

When Genoways arrived at the detention center, he stood a distance away from Bourquin while Bourquin exited the patrol car, due to the confined space of the sally port and Bourquin's large size. After booking Bourquin, Genoways walked back to his patrol car and observed a brown paper bag in the backseat.

NSP policy requires the backseat of patrol cars to be checked before, during, and after shifts. Genoways testified that he checks the backseat of his patrol car every time someone has been in the rear of the car and then removed. There was nothing in the backseat or floorboard of Genoways' patrol car prior to Bourquin's arrest.

Genoways checked the contents of the brown paper bag and found six individually sealed plastic baggies containing a white crystalline substance. Genoways believed the substance to be methamphetamine. Neither the brown paper bag, nor any of the six individual baggies, had a tax stamp or any other indication that the required tax had been paid. Genoways took custody of the brown paper bag and its contents and transported it back to the Scottsbluff Police Department evidence locker.

After locating the brown paper bag, Genoways downloaded the video from his patrol car's video dock as well as several angles from his body camera footage to determine when the methamphetamine was left inside of his patrol car. Still photographs taken from Genoways' in-car camera were entered into evidence. The photographs capture Bourquin in the backseat of the patrol

car. An object appears near Bourquin's groin as he spreads his legs apart in the backseat. The object can be seen in the backseat of the patrol car as Bourquin exits the vehicle. A photograph taken before Bourquin entered the patrol car shows an empty backseat.

Genoways' in-car video showing the backseat of his patrol car was also entered into evidence. The video captures Bourquin in the backseat of the patrol car as he is being transported to the detention center. Bourquin can be seen "squirming around" on the video and an object appears between his legs roughly 2 minutes after he has been placed inside the patrol car.

After Genoways transported the brown paper bag to the evidence locker, Kleich took possession of the bag and its contents, and subsequently sent it to the NSP Crime Laboratory. A forensic scientist at the crime laboratory tested the white crystalline substance found in the six individual baggies and confirmed that each baggie contained methamphetamine. The total weight of the methamphetamine was 157.3 grams and the weight between each of the individual baggies was generally even. The forensic scientist's report detailing the testing conducted was entered into evidence.

The forensic scientist testified that methamphetamine is a controlled substance under "Schedule II." Kumpf testified that because the methamphetamine found in the brown paper bag was packaged into separate 1-ounce baggies, the amount and packaging indicated an intent to distribute.

The case was submitted to the jury and roughly 30 minutes later, the jury unanimously found Bourquin guilty of all three counts. The district court accepted the jury's verdict and found Bourquin guilty of the three counts.

A sentencing hearing was held on April 25, 2024. The district court sentenced Bourquin to a term of 20 to 21 years' imprisonment for possession of methamphetamine with intent to distribute, more than 140 grams; ordered Bourquin to pay a fine of $300 for possession of drug paraphernalia; and sentenced Bourquin to a term of 12 to 18 months' imprisonment for failure to affix a drug tax stamp. The court ordered the sentences to be served concurrently and awarded 27 days' credit for time served.

Bourquin appeals.

ASSIGNMENTS OF ERROR

Bourquin assigns, restated, that (1) the evidence presented at trial was insufficient to sustain his convictions; (2) the district court abused its discretion by imposing an excessive sentence; and (3) his trial counsel was ineffective.

STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023).

ANALYSIS

*Sufficiency of Evidence.*

Bourquin first assigns that the evidence at trial lacked the probative value to sustain the jury's guilty verdict. Bourquin challenges the sufficiency of the evidence related to the convictions for possession of methamphetamine with intent to distribute, more than 140 grams; and failure to affix a drug tax stamp. He argues that the evidence presented at trial consisted almost entirely of circumstantial evidence and "the inferences drawn by the State, and thus followed by the jury, lacked credibility and lacked competent finality." Brief for appellant at 11. Bourquin concedes that his conviction of possession of drug paraphernalia was supported by his own admissions to law enforcement, and he does not challenge the sufficiency of that conviction on appeal.

There are two kinds of evidence, direct and circumstantial. Direct evidence directly proves the fact in dispute without inference or presumption. Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred. *State v. Dap, supra*. Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact. *Id*.

Bourquin was charged with possession of a controlled substance (methamphetamine) with intent to distribute, more than 140 grams, in violation of § 28-416(10)(a). Section 28-416 states in relevant part:

(1) Except as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance . . .

. . . .

(10) Any person who violates subsection (1) of this section with respect to amphetamine, its salts, optical isomers, and salts of its isomers, or with respect to methamphetamine, its salts, optical isomers, and salts of its isomers, in a quantity of: (a) One hundred forty grams or more shall be guilty of a Class IB felony(.)

A vehicle in which Bourquin was a passenger was being surveilled by members of a drug task force. The NSP followed the vehicle and observed Bourquin exiting the vehicle and then spending several hours inside of a known drug house. Bourquin was later taken into custody following a traffic stop. While handcuffed in the back of the patrol car, he is seen on video to be moving around. As he does so, an object appears between his legs, which was discovered to be a bag. Genoways testified that the bag was not in his patrol car prior to transporting Bourquin.

The brown paper bag found in the back of the patrol car contained six individually sealed plastic baggies, each containing a white crystalline substance. The bag and its contents were sent

to the NSP Crime Laboratory where a forensic scientist confirmed that the white crystalline substance was methamphetamine (a controlled substance), with a total net weight of 157.3 grams between the six baggies. Kumpf testified that the amount and packaging of the methamphetamine indicated an intent to distribute. Evidence of the quantity of a controlled substance possessed, combined with expert testimony that such quantity indicates an intent to deliver, can be sufficient for a jury to infer an intent to deliver. *State v. Worthman*, 311 Neb. 284, 971 N.W.2d 785 (2022).

Though on appeal Bourquin posits additional theories as to how the methamphetamine appeared in the backseat of the patrol car, we decline to resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence as such matters are for the finder of fact. See *State v. Barnes, supra*. Viewing this evidence in the light most favorable to the State, a rational trier of fact could find that Bourquin was in possession of at least 140 grams of methamphetamine with an intent to distribute.

Bourquin was also charged with failure to affix a drug tax stamp in violation of § 77-4309, which states in relevant part: "A dealer distributing or possessing marijuana or a controlled substance without affixing the official stamp, label, or other indicium shall be guilty of a Class IV felony."

Genoways testified that neither the brown paper bag, nor any of the six individual baggies, had a tax stamp or any other indication that the required tax had been paid. The forensic scientist testified that the substance in the baggies was methamphetamine, which is a controlled substance. As found above, the evidence established that Bourquin was in possession of the methamphetamine with an intent to distribute. Viewing this evidence in the light most favorable to the State, a rational trier of fact could find Bourquin was a dealer in possession of a controlled substance without an official tax stamp, label, or other indicium.

The district court did not err in accepting the jury's guilty verdicts.

*Excessive Sentence.*

Bourquin assigns that the district court abused its discretion when it imposed an excessive sentence.

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Barnes, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*. See, also, *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017) (sentencing court is accorded very wide discretion in imposing sentence).

Bourquin was convicted of possession of methamphetamine with intent to distribute, more than 140 grams, a Class IB felony. A Class IB felony is punishable by a maximum of life imprisonment and a minimum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Bourquin was also convicted of failure to affix a drug tax stamp, a Class IV felony. A Class IV felony is punishable by a maximum of 2 years' imprisonment and 12 months' post-release supervision and/or a $10,000 fine. See § 28-105. Bourquin's sentences of 20 to 21

years' imprisonment for the Class IB felony and 12 to 18 months' imprisonment for the Class IV felony are within the statutory limits. The sentences were ordered to be served concurrently. Thus, given the minimum sentence required for the Class IB felony, the lower portion of Bourquin's sentence matched the required minimum sentence.

Bourquin nevertheless claims that the district court abused its discretion, arguing that he is in poor physical health, is a caregiver for his elderly parents, and is suffering from a substance use addiction.

The PSR shows that Bourquin was 50 years old at the time the report was prepared, was divorced with two dependents, resided with his parents, was a high school graduate, and had been deemed disabled since 2017. His criminal history includes convictions of possession of marijuana (1 ounce or less) (twice); possession or use of drug paraphernalia; attempt of a Class IV felony (twice); driving under the influence; driving under suspension; and other traffic violations. For these convictions Bourquin was placed on probation or subject to fines. On the Level of Service/Case Management Inventory, Bourquin scored in the overall high risk to reoffend category.

At the sentencing hearing, the district court indicated that it had reviewed the statutory factors as well as the PSR, which contained the mitigating factors argued by Bourquin. The court specifically noted Bourquin's remorse and his long history with substance use and observed "[t]his case is interesting and difficult for the Court all at the same time." The court found that Bourquin was not a suitable candidate for probation. We find no abuse of discretion by the district court in the terms of imprisonment imposed.

However, although not raised by either party, we find plain error in the sentence imposed for possession of drug paraphernalia. An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Cooke*, 311 Neb. 511, 973 N.W.2d 658 (2022). Bourquin was convicted of possession of drug paraphernalia under Neb. Rev Stat. § 28-441. Subsection (2) of the statute provides that this offense is an infraction but does not specify a penalty. Neb. Rev. Stat. § 29-436 (Reissue 2016) states:

> Any person guilty of an infraction when a penalty is not otherwise specified shall: (1) For the first offense be fined not more than one hundred dollars; (2) upon a second conviction for the same infraction within a two-year period be fined not less than one hundred dollars and not more than three hundred dollars; and (3) upon a third or subsequent conviction for the same infraction within a two-year period be fined not less than two hundred dollars and not more than five hundred dollars.

The district court did not reference § 29-436 in its sentencing order but presumably sentenced Bourquin under § 29-436(2) as he was ordered by the court to pay a fine of $300 for his conviction of possession of drug paraphernalia. However, a review of Bourquin's presentence investigation report (PSR) does not demonstrate that Bourquin had been previously convicted of possession of drug paraphernalia within the last 2 years. Thus, § 29-436(1), rather than § 29-436(2), applied. Because this was Bourquin's first conviction of possession of drug

paraphernalia in a 2-year period, we reduce his imposed fine to $100 to be within the applicable statutory limits.

*Ineffective Assistance of Counsel.*

Bourquin assigns that he "WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN THE PROCEEDINGS BELOW." Brief for appellant at 7. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity and will not synthesize a specific assignment from the argument section of the brief of the party asserting the error. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

Although Bourquin has outlined and argued specific claims of ineffective assistance in the argument section of his brief, this assignment of error fails to specifically allege deficient performance by trial counsel, as required by our appellate caselaw. See, e.g., *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020) (rejecting appellant's argument that he met *Mrza's* specificity requirement because specific allegations of ineffective assistance were separately numbered and discussed in argument section of his brief); *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020) (rejecting appellant's argument that he met *Mrza's* specificity requirement because his assignment of error stated that particular allegations of ineffective assistance would be set forth elsewhere in brief with more particularity and because in heading of his argument on issue, he identified particular deficiencies in all bold and capital letters). Because Bourquin failed to identify counsel's alleged deficiency in his assigned error, we do not address his claim.

CONCLUSION

For the reasons stated herein, we affirm as modified the convictions and sentences imposed by the district court.

AFFIRMED AS MODIFIED.