THE VILLAGE OF WINSLOW, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT, V. CALBURT SHEETS, ALSO KNOWN AS CAL SHEETS, ALSO KNOWN AS CALVIN SHEETS, DOING BUSINESS AS CLUB 77, APPELLANT AND CROSS-APPELLEE.

622 N.W. 2d 595

Filed February 9, 2001. No. S-99-1224.

Anthony S. Troia for appellant.

David C. Mitchell and Timothy M. Schulz, of Yost, Schafersman, Lamme, Hillis, Mitchell, Schulz & Twidwell, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Café 77, Inc., owned and operated by Calburt Sheets, appeals the district court's decision granting a permanent injunction to the Village of Winslow, Nebraska (Village), which enjoined Café 77 from providing totally nude dancing, consisting of exposure of the dancers' genitals, pubic area, and/or buttocks while performing on stage or for individual clients.

## FACTUAL BACKGROUND

Winslow is an incorporated village consisting of approximately 140 people, located just outside the city limits of Fremont, Nebraska. On June 8, 1998, the Village adopted ordinance No. 90, which states:

> WHEREAS, it is the intent of the Village of Winslow to prohibit the exploitation of human nudity for the purpose of advertising, selling, or otherwise promoting the economic interests of any type of business enterprise. It is also the intent of the Village of Winslow to further the govern-

ment's interest in avoiding the harmful secondary effects of this activity such as prostitution, sexual assaults, criminal activity, degradation of women, and other activities which break down family structure. This prohibition is not intended to extend to any expression of opinion or the performance of a bona fide play, ballet, or drama protected by the First Amendment to the Constitution of the United States or by Article I, § 5 of the Constitution of the State of Nebraska[.]

. . . .
. . . It shall be unlawful for any person to intentionally expose his or her genitals, pubic area, or buttocks while employed in providing any service, product, or entertainment in any business or commercial establishment. It shall also be unlawful for anyone to aid, abet, assist or direct another person to intentionally expose his or her genitals, pubic area, or buttocks while employed in providing any service, product, or entertainment in any business or commercial establishment.

. . . .
. . . [A]ny activities in violation of this Section shall be deemed to be a nuisance and may be abated and suppressed by injunctive or other equitable relief as allowed by law.

The Village passed ordinance No. 90 a few weeks after Café 77, an establishment offering completely nude exotic dancing along with food and nonalcoholic drinks, opened along Main Street in the Village. The Village was not aware that Café 77 intended to offer nude dancing, and Café 77 did not apply for a business permit from the Village prior to opening. Café 77 was open for business on Friday and Saturday nights from midnight to at least 3 a.m. Complaints from Village citizens led the Village board to call a meeting on June 8, 1998, to adopt ordinance No. 90.

The minutes of the June 8, 1998, meeting state the concerns of the citizens regarding the operation of Café 77, including patrons' consuming alcohol on Main Street in front of the establishment, urinating in the street, parking illegally, harassing people on Main Street, swearing, carrying alcohol, and littering. It was also noted in the minutes that a female resident had been

propositioned to dance at the establishment and that having a completely nude dancing establishment in the Village was not good for the children in the community.

After ordinance No. 90 was adopted, the Village filed a motion for a temporary and permanent injunction against Café 77, which was heard on July 7, 1998. The Village introduced evidence that Café 77 was operating in violation of ordinance No. 90 by offering completely nude dancing inside its premises. The court granted a temporary injunction and enjoined Café 77 from providing totally nude dancing. Sheets voluntarily closed Café 77, and it has not been in operation since that time.

Ordinance No. 90 was amended and readopted as ordinance No. 96 on June 9, 1999. Ordinance No. 96 contains language identical to the language in ordinance No. 90, except that the wording of § 2, dealing with fines for violating the ordinance, was changed. The punishment for a violation under ordinance No. 90 was a fine of up to $100 per violation and payment of prosecution costs. Ordinance No. 96 added to the punishment "any other costs and expenses as allowed by law."

Trial on the permanent injunction was held on September 28, 1999. The parties submitted a stipulation as to various facts in the case. Included in this stipulation was the agreement that the named business in the case should be Café 77, which had been misidentified as Club 77 in the original pleadings. The parties also stipulated that both ordinances were passed and adopted by the Village in a procedurally correct manner. In addition to the stipulated facts, evidence was also presented by various witnesses.

Launette Kotik, the Village clerk, testified that she lives next door to the building where Café 77 is housed. Kotik testified that on Friday and Saturday evenings, when Café 77 was operating, she observed large numbers of people going into Café 77. Some of these patrons parked in her backyard and refused to move their cars when she asked them to. Kotik testified that the music was very loud and that several of the patrons appeared drunk. Kotik also observed patrons urinating in her yard and throwing beer cans in her yard whenever Café 77 was open. On one occasion, Kotik saw some men standing outside the bar speaking to her daughter as she was walking into their house.

Since the Village does not have its own law enforcement personnel, Kotik called the Dodge County Sheriff's office to report people urinating and littering on at least two occasions. However, by the time law enforcement could arrive, the offenders were no longer present.

Ed Leeper, the chairman of the Village board, also testified. He stated that he observed patrons urinating in the street by Café 77 and off the back deck of Café 77. He also saw patrons throwing beer cans in the street and in the surrounding yards. He noted that Café 77 caused extra traffic and parking problems on Friday and Saturday evenings. He also noted that he received complaints from the citizens of the Village about the impact of Café 77 on the community's children.

Kotik's daughter testified that one night as she was returning home about 12:30 a.m., the two doormen at Café 77 called out to her and asked if she was one of the dancers. She said no. They responded, "We could pretend that this is amateur night and you could come in and dance for us." She did not answer and went inside her house. This was the same incident Kotik had observed.

Sheets, the owner of Café 77, also testified. He stated that in addition to owning Café 77, he also owns the Lariat Club, Inc. The Lariat Club is a bar located in nearby Fremont which features topless dancing. When Café 77 opened, the marquee outside the Lariat Club read:

NOW OPEN CAFE 77
DANCERS FRI SAT
JUICE SERVED 12 AM

Sheets testified that on a typical evening at Café 77, between five and six dancers would perform dances, including dancing completely nude. The dancers also performed in a "tent" area, where the dancers gave similar performances, but for one patron alone and at an additional charge. Sheets also stated that he believed he had to shut down Café 77 after the temporary injunction was issued, although the injunction says nothing about closing Café 77, but simply prohibits the dancers from appearing with "genitals, pubic area, or buttocks" exposed. Sheets still owns the building where Café 77 operates and maintains the outside of the premises. Sheets' testimony indicates

that he intends to operate Café 77 as a completely nude dancing establishment if the injunction is lifted.

Finally, Michele Lynn Winslow, a dancer at the Lariat Club, Café 77, and other establishments, testified. She stated that her dances include costumes, music, and practiced routines. She stated that about half of her income comes from dancing at topless establishments like the Lariat Club and half from completely nude dancing establishments like Café 77. The attorney for the Village asked her, "So if I understand you correctly then, you're able to convey your erotic message equally to clubs where you — where it is topless only as opposed to totally nude, correct?" She responded, "Yes."

The court found that ordinance No. 90, as amended by ordinance No. 96 (hereinafter ordinance No. 96), is a valid ordinance "not specifically directed at expression and there are no vested rights or first amendment rights of the Defendant which are being unlawfully impinged upon by the Plaintiff." The court granted a permanent injunction, to wit:

> "Defendants, and each of them, are hereby enjoined and prohibited from providing totally nude dancing or entertainment consisting of the exposure of the employee or dancer's genitals, pubic area and/or buttocks while performing at the establishment located on 301 Main Street in Winslow, Nebraska which is known as Cafe 77."

Café 77 appealed, and we moved the case to our court pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Café 77 asserts, restated, that the trial court erred in (1) finding that ordinance No. 96 is not specifically directed at expression, (2) finding that ordinance No. 96 does not violate the First Amendment, (3) failing to find that ordinance No. 96 is unconstitutionally vague, and (4) finding that the entertainment presented at Café 77 constituted a nuisance as defined by ordinance No. 96.

In its cross-appeal, the Village asserts, rephrased, that the trial court erred in determining the Village had failed to prove other

nuisance activities were taking place at Café 77 in addition to the completely nude dancing.

## STANDARD OF REVIEW

■ An action for injunction sounds in equity. In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999); *Rush Creek Land & Live Stock Co. v. Chain*, 255 Neb. 347, 586 N.W.2d 284 (1998).

■ The constitutionality of an ordinance presents a question of law, in which an appellate court is obligated to reach a conclusion independent of the decision reached by the trial court. *State v. Champoux*, 252 Neb. 769, 566 N.W.2d 763 (1997).

## ANALYSIS

### FIRST AMENDMENT

■ The 1st Amendment to the U.S. Constitution, made applicable to the states through the 14th Amendment, requires that the state "make no law . . . abridging the freedom of speech." The parameters of the constitutional right to freedom of speech are the same under both Neb. Const. art. I, § 5, and the U.S. Constitution. *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995). See, also, *State v. Simants*, 194 Neb. 783, 236 N.W.2d 794 (1975), *reversed on other grounds sub nom. Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).

■ The U.S. Supreme Court has stated that while "[b]eing 'in a state of nudity' is not an inherently expressive condition," nonobscene nude dancing is "expressive conduct . . . within the outer ambit of the First Amendment's protection." *Erie v. Pap's A. M.*, 529 U.S. 277, 289, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000). See, also, *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991). As such, the first step in our analysis is to determine the appropriate level of scrutiny to apply to ordinance No. 96 under the First Amendment.

 Recently, in *Erie v. Pap's A. M., supra*, the U.S. Supreme Court addressed this issue in analyzing a nude dancing ordinance enacted by the city of Erie, Pennsylvania. The Erie ordinance in part enjoined one from appearing in public with genitals, pubic hair, buttocks, or breasts uncovered. The plurality stated that when the ordinance on its face is designed to "target nudity that contains an erotic message," the ordinance is a content-based restriction, subject to strict scrutiny. 529 U.S. at 290. See, also, *Erie v. Pap's A. M., supra* (Souter, J., concurring in part, and in part dissenting); *Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000). If the ordinance instead seeks to regulate the "secondary effects" caused by establishments which offer nude dancing, the ordinance is content neutral, and strict scrutiny does not apply. *Erie v. Pap's A. M.*, 529 U.S. at 291. See, also, *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986). When the ordinance is content neutral, the proper standard of review is the intermediate scrutiny, expressive conduct test first enunciated in *United States v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968) (First Amendment challenge to federal law making it crime to burn one's draft card). See, also, *Farkas v. Miller*, 151 F.3d 900 (8th Cir. 1998).

Contrary to the assertions of Café 77, we conclude that ordinance No. 96 on its face is a content-neutral ordinance designed to regulate the secondary effects of nude dancing establishments. The ordinance prohibits any person from "intentionally expos[ing] his or her genitals, pubic area, or buttocks while employed in providing any service, product, or entertainment in any business or commercial establishment." This prohibition does not on its face target nude dancing, but prohibits a certain state of undress in any business or commercial setting.

The preamble to the ordinance states that in enacting the ordinance "it is . . . the intent of the Village of Winslow to further the government's interest in avoiding the harmful secondary effects of this activity such as prostitution, sexual assaults, criminal activity, degradation of women, and other activities which break down family structure." Ordinance No. 96 is addressing secondary effects similar to those discussed in *Erie v. Pap's A. M., supra*, seeking to combat "crime and other negative secondary

effects caused by the presence of adult entertainment establishments." 529 U.S. at 291. Under the *Erie* standard, the Village ordinance is a content-neutral ordinance seeking to combat the secondary effects of establishments offering nude dancing.

Café 77 argues that strict scrutiny should apply because the ordinance was actually enacted with the intention of targeting Café 77 and attempting to silence the expressive message conveyed by the nude dancing. A similar argument was made in *Erie*, where the defendants asserted that the city "also had an illicit motive in enacting the ordinance," by attempting to suppress the expressive message of nude dancing. *Erie v. Pap's A. M.*, 529 U.S. 277, 292, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000). The Supreme Court rejected that argument, as we do here. A court "will not strike down an otherwise constitutional [ordinance] on the basis of an alleged illicit motive" in enacting the ordinance. *Id.* See, also, *Renton v. Playtime Theatres, Inc.*, *supra*; *United States v. O'Brien, supra*; *J&B Entertainment, Inc. v. City of Jackson, Miss.*, 152 F.3d 362 (5th Cir. 1998); *D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140 (4th Cir. 1991). While the opening of Café 77 clearly made the Village aware of the problems associated with adult entertainment establishments, the ordinance enacted by the Village is a generally applicable content-neutral ordinance and does not target the expressive message conveyed by Café 77's dancers.

Therefore, we determine that the proper standard of review for ordinance No. 96 is the intermediate scrutiny, expressive conduct test first announced in *United States v. O'Brien, supra*. Under the *O'Brien* test, ordinance No. 96 will satisfy the requirements of the First Amendment if the Village can show that the ordinance (1) is within the constitutional power of the government to enact, (2) reasonably furthers a substantial government interest, (3) is unrelated to the suppression of free expression, and (4) imposes a restriction that is no greater than is essential to the furtherance of the substantial government interest. *Erie v. Pap's A. M., supra*.

Regarding the first prong, it is within the power of a municipality to regulate public nudity as a matter of "public health and safety." *Erie v. Pap's A. M.*, 529 U.S. at 300. Thus, it is within the power of the Village to enact ordinance No. 96.

█ The second prong requires the Village to show it has a substantial governmental interest in regulating public nudity and that the ordinance does in fact reasonably further this substantial interest. *Erie v. Pap's A. M., supra.* We address the two subparts of the second prong separately. Regarding the existence of a substantial governmental interest, the plurality in *Erie* agreed that the government has a substantial interest in "combating the harmful secondary effects associated with nude dancing." 529 U.S. at 300. See, also, *Erie v. Pap's A. M., supra* (Souter, J., concurring in part, and in part dissenting). This rationale was first expressed in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991) (Souter, J., concurring in judgment), where Justice Souter opined that combating the secondary effects of adult entertainment establishments, including increased criminal activity, prostitution, and sexual crimes, constitutes a substantial governmental interest. This rationale has also been adopted by several federal circuit courts in interpreting the *Barnes* decision. See, e.g., *Farkas v. Miller,* 151 F.3d 900 (8th Cir. 1998); *Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129 (6th Cir. 1994); *D.G. Restaurant Corp. v. City of Myrtle Beach, supra.*

The Village noted in the preamble that the ordinance was designed to combat the secondary effects of establishments offering completely nude dancing, including increased criminal activity and the degradation of women. The Village also provided evidence to show that the deleterious secondary effects of nude dancing establishments in the Village are real and actual, not merely conjectural.

In the minutes of the meeting at which the ordinance was first enacted, the Village noted several deleterious secondary effects, namely an increase in public drunkenness, public urination, illegal parking, and one instance of a female community member being propositioned. This evidence was later supported by eyewitness testimony provided by residents of the Village during the hearing on the injunction. The Village has accordingly demonstrated that it has a substantial interest in regulating the secondary effects of establishments which offer nude dancing.

The Village must also show that its substantial interest in regulating the secondary effects is in fact furthered by the regulation. *Erie v. Pap's A. M.,* 529 U.S. 277, 120 S. Ct. 1382, 146 L.

Ed. 2d 265 (2000) (Souter, J., concurring in part, and in part dissenting). We conclude that the record shows that ordinance No. 96 reasonably furthers the Village's interest in combating deleterious secondary effects. The Village ordinance essentially bans bottomless dancing, while allowing topless dancing. While this might initially seem to render ordinance No. 96 even less effective at combating secondary effects than the *Erie* ordinance, which prohibited both topless and bottomless dancing, such a conclusion would overlook the context of the Village's decision. Ordinance No. 96 was drafted with the recognition that topless dancing is permitted in nearby Fremont. The record shows that Sheets, the owner of Café 77, also owns and operates a topless bar, the Lariat Club, in Fremont. In hopes of enticing the Lariat Club customers to another late-hour adult entertainment establishment in the Village, the owner advertised Café 77 on the marquee outside the Lariat Club.

The Village, by passing this ordinance, simply required that the dancing provided at Café 77 in the Village be subject to the same restrictions as the dancing at the Lariat Club in Fremont. Accordingly, there would be no extra incentive to operate or visit a nude dancing establishment in the Village, a town of less than 150 people. This would help to reduce the amount of patrons willing to travel to the Village, which would help lessen the secondary effects associated with nude dancing establishments. Accordingly, we determine the record establishes that ordinance No. 96 reasonably furthers a substantial and important governmental interest by reducing the deleterious secondary effects associated with nude dancing establishments.

The third prong of the test in *United States v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), requires that the regulation be unrelated to the suppression of free expression. See *Erie v. Pap's A. M., supra*. Ordinance No. 96 on its face addresses nudity at any commercial or business establishment, "regardless of whether that nudity is accompanied by expressive activity." *Erie*, 529 U.S. at 290. This, and the fact that the ordinance allows one to appear topless, shows that the ordinance is intended to regulate the conduct of appearing with "genitals, pubic area, or buttocks" exposed and not intended to silence the expressive message conveyed by all nude dancing.

Finally, the fourth prong of the *O'Brien* test requires that the ordinance impose no greater restriction than is essential to the furtherance of the governmental interest. *Erie v. Pap's A. M., supra.* We conclude that ordinance No. 96 meets this standard because any incidental impact on the expressive element of nude dancing created by the ordinance is *"de minimis."* See *Erie,* 529 U.S. at 301. In *Erie,* the plurality reasoned that requiring dancers to wear pasties and G-strings is a restriction which "leaves ample capacity to convey the dancer's erotic message." *Id.* Ordinance No. 96 is even less restrictive than the ordinance at issue in *Erie* in that the Village's ordinance does not require the wearing of any clothing above the waist. The de minimis nature of the restriction upon expression imposed by ordinance No. 96 is further supported by Michele Lynn Winslow's testimony. She stated that she was able to convey the same erotic message whether dancing totally or partially nude. Ordinance No. 96 imposes no greater restriction than is essential to further the Village's interest in combating the secondary effects of completely nude dancing establishments.

For the foregoing reasons, we determine that ordinance No. 96 does not violate the First Amendment.

### VAGUENESS

Café 77 also asserts that ordinance No. 96 is unconstitutionally vague, based on the following savings clause in the ordinance, which states, "[t]his prohibition is not intended to extend to any expression of opinion or the performance of a bona fide play, ballet, or drama protected by the First Amendment . . . ."

The void-for-vagueness doctrine requires that an ordinance define the prohibited conduct with sufficient definiteness such that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *State v. Beyer,* 260 Neb. 670, 619 N.W.2d 213 (2000). Ordinance No. 96 prohibits one from "intentionally expos[ing] his or her genitals, pubic area, or buttocks while employed in providing any service, product, or entertainment in any business or commercial establishment." This language is not vague as applied to the dancing which occurred at Café 77.

However, Café 77 argues that the exception of "any expression of opinion or the performance of a bona fide play, ballet, or drama" encourages arbitrary enforcement. Café 77 asserts that because nude dancing is a type of "communicative art[]," brief for appellant at 7, it is not reasonably clear under ordinance No. 96 whether nude dancing such as the kind performed at Café 77 would be considered a bona fide ballet, play, or drama. In support of its assertion, Café 77 relies upon the testimony of Michele Lynn Winslow, who testified that the dancers use different types of music, costumes, and tempos and that they rehearse their routines.

We determine that the savings clause contained in ordinance No. 96 is not vague. No reasonable person would consider the nude dancing provided in Café 77 to be a ballet, play, or drama as those terms are commonly understood. Michele Lynn Winslow defined her communicative art form as "tak[ing] our clothes off." Adding music and costumes cannot transform nude dancing at Café 77 into a ballet, play, or drama. See *Walker v. City of Kansas City, Mo.*, 911 F.2d 80 (8th Cir. 1990) (nude dancing not serious literary, artistic, or political endeavor).

Finally, Café 77 asserts the trial court erred in determining that the entertainment presented in Café 77 constituted a nuisance as defined by ordinance No. 96. The ordinance states: "any activities in violation of [the ordinance] shall be deemed to be a nuisance and may be abated and suppressed by injunctive or other equitable relief as allowed by law." The evidence at trial established that dancers inside Café 77 were appearing completely nude. This is a violation of the ordinance, and as such, the court correctly found that such activity constituted a nuisance under ordinance No. 96.

## CROSS-APPEAL

The Village asserts in its cross-appeal that the trial court erred in failing to separately enjoin the excessive noise, littering, and public urination taking place at Café 77 as public nuisances. The record shows that these secondary effects occurred while Café 77 was being operated as a totally nude dancing establishment. Under the permanent injunction issued by the district court, Café 77 cannot be operated as a totally nude dancing establish-

ment, and the secondary effects associated with completely nude dancing no longer exist. The Village's cross-appeal seeks to determine a question which does not rest upon existing facts or rights, and is therefore moot. See *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000).

## CONCLUSION

We find that Café 77's assignments of error are without merit. No First Amendment rights have been violated by ordinance No. 96. Accordingly, the permanent injunction issued by the Dodge County District Court is affirmed.

We further find that the Village's cross-appeal is moot and is hereby dismissed.

AFFIRMED.