Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/09/2024 09:08 AM CDT

State of Nebraska, appellee, v.
William Zitterkopf, appellant.
___ N.W.3d ___

Filed August 9, 2024.    No. S-23-513.

1. **Judgments: Pleadings: Plea in Abatement: Appeal and Error.**
   Regarding questions of law presented by a motion to quash or plea in
   abatement, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court.

2. **Constitutional Law: Statutes: Appeal and Error.** The constitutionality
   of a statute presents a question of law, which an appellate court independently reviews.

3. **Effectiveness of Counsel: Constitutional Law: Statutes: Records:
   Appeal and Error.** Whether a claim of ineffective assistance of trial
   counsel can be determined on direct appeal presents a question of law,
   which turns upon the sufficiency of the record to address the claim
   without an evidentiary hearing or whether the claim rests solely on the
   interpretation of a statute or constitutional requirement.

4. **Effectiveness of Counsel: Appeal and Error.** In reviewing a claim
   of ineffective assistance of trial counsel on direct appeal, an appellate
   court determines as a matter of law whether the record conclusively
   shows that (1) a defense counsel's performance was deficient or (2)
   a defendant was or was not prejudiced by a defense counsel's alleged
   deficient performance.

5. **Constitutional Law: Statutes.** Generally, a facial challenge seeks to
   void the statute in all contexts for all parties. In contrast, an as-applied
   challenge often concedes the statute is constitutional in some of its
   applications, but contends it is unconstitutional as applied to the particular facts of the case.

6. ____: ____. An as-applied challenge does not seek to void the statute
   for all purposes, but seeks only to prevent the statute's application to the
   facts before the court.

7. \_\_\_\_: \_\_\_\_. In order to prevail upon a First Amendment facial attack to the constitutionality of a statute, the challenger must show either that every application of the statute creates an impermissible risk of suppression of ideas or that the statute is "substantially" overbroad, which requires the court to find a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court.

8. **Constitutional Law: Statutes: Standing.** A party has standing to challenge a statute as overbroad, even if unaffected by the part that punishes protected speech, when the party claims that the statute will significantly compromise the free speech rights of others not before the court.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Standing to challenge the constitutionality of a statute under the federal or state Constitution depends upon whether one is, or is about to be, adversely affected by the language in question.

10. **Constitutional Law: Criminal Law.** The parameters of the constitutional right to freedom of speech are the same under both the federal and the state Constitutions and both mean that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content and limit the State's ability to prosecute certain criminal offenses when such prosecution entails content control involving protected speech.

11. **Constitutional Law.** The free speech protection of the First Amendment is not limited to the spoken or written word but extends to other expressive conduct, including videos and photographs.

12. \_\_\_\_. The broad protections afforded by the federal and state Constitutions are not absolute.

13. \_\_\_\_. The general rule against government control over the content of speech does not apply to certain well-defined and narrowly limited categories of expression that are unprotected.

14. **Constitutional Law: Criminal Law: Libel and Slander: Obscenity.** Categories of content that can be proscribed include libel, obscenity, incitements to imminent lawlessness, true threats, and fighting words.

15. **Constitutional Law: Presumptions.** A content-based restriction on speech is presumptively invalid and subject to strict scrutiny.

16. **Constitutional Law.** A restriction that is content neutral is subject to an intermediate level of scrutiny.

17. \_\_\_\_. Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.

18. **Constitutional Law: Presumptions: Proof.** A content-based restriction on protected speech is presumptively invalid and subject to strict scrutiny, and the State bears the burden to rebut that presumption.

19. **Constitutional Law: Proof.** Strict scrutiny requires the government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

20. **Constitutional Law: Statutes: Proof.** When a party does not claim that a challenged law has no valid application, a facial challenge must establish that a substantial number of the law's applications are unconstitutional in relation to its legitimate sweep. If shown, this substantial overbreadth invalidates all enforcement of the law. Conversely, the attack fails if the challenger fails to meet this burden.

21. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

22. ____: ____: ____: ____. An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

23. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

24. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

25. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

26. ____: ____. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

27. ____: ____. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

Appeal from the District Court for Scotts Bluff County, Leo P. Dobrovolny, Judge. Affirmed.

Michael J. Wilson, of Berry Law Firm, for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## I. NATURE OF CASE

William Zitterkopf appeals his conviction in the district court for Scotts Bluff County for unlawful distribution of an intimate image in violation of Neb. Rev. Stat. § 28-311.08(3) (Cum. Supp. 2022). Zitterkopf claims that the district court erred when it overruled his motion to quash in which he challenged the constitutionality of § 28-311.08(3) on the basis that it was overbroad on its face and violated constitutional guarantees of free speech. Zitterkopf also asserts two claims of ineffective assistance of trial counsel. Although our reasoning differs from that of the district court, we affirm Zitterkopf's conviction.

## II. STATEMENT OF FACTS

In April 2022, the State charged Zitterkopf with one count of unlawful distribution of an intimate image in violation of § 28-311.08(3), which provides, "It shall be unlawful for any person to knowingly and intentionally distribute or otherwise make public an image or video of another person recorded in violation of subsection (2) of this section without that person's consent." Section 28-311.08(2) provides in part,

It shall be unlawful for any person to knowingly and intentionally photograph, film, or otherwise record an image or video of the intimate area of any other person without his or her knowledge and consent when his or her intimate area would not be generally visible to the public regardless of whether such other person is located in a public or private place.

The original information also charged one count of tampering with a witness, but that charge was dismissed prior to trial.

The charges against Zitterkopf arose from allegations that in June 2021, he had video recorded a sexual encounter with the victim, L.E., without her knowledge and consent, and in March 2022, he sent to his ex-wife a screenshot from the video recording that showed L.E. nude from the waist down. L.E. and Zitterkopf's ex-wife were friends, and in the Zitterkopfs' divorce proceedings, L.E. had provided an affidavit in support of Zitterkopf's ex-wife. Zitterkopf appealed the divorce decree in March 2022. When Zitterkopf sent the screenshot to his ex-wife, he also sent a copy to L.E. with a message stating that she should confess to the judge that she lied in her affidavit.

Prior to trial, Zitterkopf filed a motion to withdraw his plea of not guilty because he "plan[ned] to file a Motion to Quash on 1st amendment grounds." After the court granted withdrawal of the plea, Zitterkopf filed a motion to quash the charge under § 28-311.08(3) because, he asserted, the statute "is unconstitutional on its face and violates the defendant's right to Due Process under the United States Constitution."

After a hearing, the district court overruled Zitterkopf's motion to quash. In its order, the court stated that Zitterkopf's primary argument was that § 28-311.08(3) "is overbroad, as it arguably prohibits other protected speech." The court characterized Zitterkopf's challenge as a facial challenge and stated that Zitterkopf did not claim that the statute had no valid application but claimed that the statute was overbroad because, in addition to forbidding speech that is not

constitutionally protected, the statute prohibited the exercise of constitutionally protected speech.

The district court stated that it could invalidate the statute on its face only if the statute's overbreadth was substantial, meaning that it was unconstitutional in a substantial portion of the cases to which it applied. The court found that § 28-311.08(3) was not unconstitutional in a substantial portion of the cases to which the statute applied, and it stated that the "examples given . . . in the defense brief are largely inapplicable to the factual situation of this statute." The court stated that § 28-311.08(3) required a lack of consent both when the image was created and again when it was distributed or made public. The court reasoned that the prohibitions of the statute were not content based because the focus of the law was to prohibit the making of private images public without consent. The court stated that the statute did not target any message or idea that was being conveyed and that it instead targeted the nonconsensual nature of the disclosure of the image.

The court stated that as a content-neutral law, § 28-311.08(3) was subject to an intermediate level of scrutiny, meaning it "must serve an important or substantial governmental interest unrelated to the suppression of free speech and must not burden substantially more speech than necessary to further that interest." The court further found that the specific speech in this case was unprotected speech because it was alleged that Zitterkopf was "seek[ing] to blackmail [the victim] or influence future testimony given to a court in a divorce proceeding." The court concluded that Zitterkopf's challenge to § 28-311.08(3) failed whether the challenge was based on "strict scrutiny, intermediate scrutiny, or simply not protected speech."

Zitterkopf thereafter entered a plea of not guilty, and the matter went to trial in April 2023. Witnesses presented by the State included L.E., Zitterkopf's ex-wife, and Andrew Soucie, a police officer who investigated this matter. L.E. generally

testified that she did not know that Zitterkopf was video recording their sexual encounter and that she did not consent to the recording. She testified that Zitterkopf texted her a screenshot from the recording, which depicted her undressing, and that thereafter, Zitterkopf's ex-wife also texted her the same screenshot. Zitterkopf's ex-wife testified that Zitterkopf sent the screenshot to her and that she then sent it to L.E. Zitterkopf's ex-wife testified that a few days after Zitterkopf sent her the screenshot, he called her on "FaceTime" and showed her a video recording that included the screenshot.

Soucie testified regarding his investigation of the incident. He testified that he took a report from L.E. and that she reported that she had received a photograph of herself undressing and that she "was unaware of" the photograph and that she "was not aware that it was completed" and "did not give [her] consent." Soucie was shown the image L.E. received from Zitterkopf, and he testified that it was the photograph that L.E. had shown to him when she reported the incident. Soucie was also shown the image L.E. received from Zitterkopf's ex-wife, which displayed a name that was the same as Zitterkopf's ex-wife's first name. Soucie testified that he was able to identify the person named as Zitterkopf's ex-wife. Zitterkopf's counsel did not object to these portions of Soucie's testimony.

The jury found Zitterkopf guilty of unlawful distribution of an intimate image. The court accepted the verdict and entered judgment against Zitterkopf. The court later sentenced Zitterkopf to probation for 3 years.

Zitterkopf appeals his conviction.

### III. ASSIGNMENTS OF ERROR

Zitterkopf claims that the district court erred when it overruled his motion to quash and rejected his constitutional challenge to § 28-311.08(3). He also claims that his trial counsel provided ineffective assistance when counsel (1) failed to make a hearsay objection to Soucie's testimony regarding

out-of-court statements made by L.E. to the effect that she did not consent to the video recording or distribution of the images and (2) failed to present testimony by Zitterkopf and by Zitterkopf's cousin, which testimony Zitterkopf alleges would have supported a finding that L.E. consented to the recording.

## IV. STANDARDS OF REVIEW

[1,2] Regarding questions of law presented by a motion to quash or plea in abatement, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court. *State v. Jedlicka*, 305 Neb. 52, 938 N.W.2d 854 (2020). The constitutionality of a statute presents a question of law, which an appellate court independently reviews. *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023).

[3,4] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. District Court Did Not Err When It Rejected Zitterkopf's Constitutional Challenge to § 28-311.08(3) and Overruled His Motion to Quash

Zitterkopf first claims that the district court erred when it overruled his motion to quash and rejected his constitutional challenge to § 28-311.08(3). In our analysis that follows, we

look preliminarily at overbreadth and Zitterkopf's standing, the applicability of the First Amendment to the expression at issue, and the conventional First Amendment merits analysis addressing protected speech, content, and level of scrutiny—the latter of which implicates consideration of compelling interest and narrow tailoring. We conclude that the district court did not err when it rejected Zitterkopf's constitutional challenge and therefore overruled his motion to quash.

[5,6] We have recognized that a constitutional challenge may be made either as a facial challenge to the statute or as a challenge to the application of the statute to a specific person in a specific case. We have described a facial challenge as a challenge to a statute, asserting that no valid application of the statute exists because it is unconstitutional on its face. *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017). Generally, a facial challenge seeks to void the statute in all contexts for all parties. *Id.* In contrast, an as-applied challenge often concedes the statute is constitutional in some of its applications, but contends it is unconstitutional as applied to the particular facts of the case. *Id.* An as-applied challenge does not seek to void the statute for all purposes, but seeks only to prevent the statute's application to the facts before the court. *Id.*

[7] In describing a facial challenge based on First Amendment grounds, we have stated that

> in order to prevail upon a First Amendment facial attack to the constitutionality of a statute, the challenger must show either that every application of the statute creates an impermissible risk of suppression of ideas or that the statute is "substantially" overbroad, which requires the court to find a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court.

*State v. Scott*, 284 Neb. 703, 715, 824 N.W.2d 668, 682 (2012).

In the present case, Zitterkopf asserted a facial challenge to § 28-311.08(3). He did not raise an as-applied challenge and does not argue that § 28-311.08(3) is unconstitutional as

applied to his case. In his facial challenge, he does not argue that every application of § 28-311.08(3) is unconstitutional; instead, Zitterkopf's facial challenge to § 28-311.08(3) relies on an argument that the statute is substantially overbroad.

### (a) Overbreadth Challenge and Standing

[8] Before reviewing the merits of Zitterkopf's First Amendment challenge, we address the State's argument that a defendant does not have standing to challenge a statute based on overbreadth. The State acknowledges that in *State v. Kass*, 281 Neb. 892, 900-01, 799 N.W.2d 680, 689 (2011), we recognized that "a party has standing to challenge a statute as overbroad, even if unaffected by the part that punishes protected speech, when the party claims that the statute will significantly compromise the free speech rights of others not before the court." But the State argues that such precedent was based on federal law and that this court is not required to interpret standing under state law in the same way that it is interpreted in federal law. The State urges us to overrule *State v. Kass* and related precedent and reject standing to challenge a statute based on overbreadth.

[9] We have stated as a general matter of standing in criminal cases that "[s]tanding to challenge the constitutionality of a statute under the federal or state Constitution depends upon whether one is, or is about to be, adversely affected by the language in question" and that a criminal defendant "has standing to challenge only the statute that was relevant to the prosecution of his case." *State v. Hibler*, 302 Neb. 325, 339, 923 N.W.2d 398, 412 (2019). Zitterkopf was criminally charged under § 28-311.08(3), which makes the statute clearly relevant to the prosecution of his case, and therefore, he had standing to challenge the constitutionality of the statute. The State's argument, however, focuses specifically on a First Amendment overbreadth argument that relies on the application of the statute to other persons, rather than its application to a specific person in a particular case. The State argues that

Zitterkopf and other criminal defendants should be allowed to challenge a statute only when the challenge is based on the specific facts of their cases.

As noted above, this court has recognized standing based on overbreadth. In *State v. Kass*, we recognized that the rule of standing based on overbreadth "exists out of 'concern that the threat of enforcement of an overbroad law may deter or "chill" constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions.'" 281 Neb. at 901, 799 N.W.2d at 689 (quoting *Virginia v. Hicks*, 539 U.S. 113, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003)). Even before *State v. Kass*, we described the concerns underlying overbreadth by stating that

> an individual whose own speech or conduct may be prohibited is permitted to challenge an enactment on its face because it also threatens others not before the court who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid

and that the "doctrine is predicated on the sensitive nature of protected expression and the fear that '"persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression."'" *State v. Hookstra*, 263 Neb. 116, 122, 638 N.W.2d 829, 835 (2002) (quoting *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982), quoting *Schaumburg v. Citizens for Better Environ.*, 444 U.S. 620, 100 S. Ct. 826, 63 L. Ed. 2d 73 (1980)).

The State notes this court's reliance on federal law in recognizing overbreadth standing and argues that this court may depart from federal law regarding standing and refuse to recognize standing based on overbreadth. However, we recognize the merit of the reasoning as set forth in our prior cases, and we conclude that the State's argument in this case provides no basis to overrule *State v. Kass*, 281 Neb. 892, 799

N.W.2d 680 (2011), and other cases in which we have recognized overbreadth standing.

For completeness, we note that we have recognized that the issue of standing in an overbreadth challenge is intertwined with consideration of the merits of the challenge. We have stated that "although our prior case law has sometimes referred to 'substantial overbreadth' as an aspect of standing, it is more properly characterized as a test for determining the merits of a facial overbreadth claim." *State v. Hookstra*, 263 Neb. at 124, 638 N.W.2d at 836. Therefore, we more fully consider Zitterkopf's arguments regarding substantial overbreadth in our review of the merits of Zitterkopf's challenge to § 28-311.08(3).

### (b) Applicability of First Amendment

[10] The 1st Amendment to the U.S. Constitution, applicable to the states via the 14th Amendment, provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." Similarly, article I, § 5, of the Nebraska Constitution provides that "[e]very person may freely speak . . . on all subjects . . . ." We have recognized that the parameters of the constitutional right to freedom of speech are the same under both the federal and the state Constitutions and that both mean that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. See *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). In effect, both limit the State's ability to prosecute certain criminal offenses when such prosecution entails content control involving protected speech. See *id*.

[11] We note that § 28-311.08(3) targets distributing or otherwise making public "an image or video," and it does not explicitly operate on speech, per se. However, the U.S. Supreme Court has established that the free speech protection of the First Amendment "is not limited to 'the spoken or written word,' but extends to other expressive conduct including

videos and photographs." *State v. Casillas*, 952 N.W.2d 629, 636 (Minn. 2020) (quoting *Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989)). We therefore determine that constitutional free speech protections apply to the distribution of images and videos.

(c) Protected Speech or Unprotected Speech

[12-14] The broad protections afforded by the federal and state Constitutions, however, are not absolute. *State v. Grant, supra*. The general rule against government control over the content of speech does not apply to certain well-defined and narrowly limited categories of expression that are unprotected. See *id*. Categories of content that can be proscribed include libel, obscenity, incitements to imminent lawlessness, true threats, and fighting words. *Id*.

Courts in other states that have considered First Amendment challenges to statutes that, like § 28-311.08(3), seek to restrict nonconsensual dissemination of intimate images have generally determined that such statutes are not within one of the established categories of unprotected speech. See, *State v. Casillas, supra* (rejecting argument that statute covered unprotected obscene speech only); *State v. VanBuren*, 210 Vt. 293, 214 A.3d 791 (2019) (rejecting contention that statute categorically regulates obscenity). Furthermore, courts in other states have been reluctant to recognize a new category of unprotected speech related to nonconsensual distribution of private sexual or intimate images, absent a determination by the U.S. Supreme Court that such speech is unprotected by the First Amendment. See, *State v. Katz*, 179 N.E.3d 431 (Ind. 2022); *State v. Casillas*, 952 N.W.2d at 638 ("although we recognize that developments in both law and society may merit a reevaluation of privacy interests within the context of the First Amendment, there is not enough evidence or established guidance to categorically remove constitutional protection for speech that constitutes a substantial invasion of privacy"); *People v. Austin*, 2019 IL 123910, ¶ 36, 155

N.E.3d 439, 455, 440 Ill. Dec. 669, 685 (2019) ("we decline to identify a new categorical first amendment exception when the United States Supreme Court has not yet addressed the question"); *State v. VanBuren*, 210 Vt. at 309, 214 A.3d at 801-02 ("we decline to identify a new categorical exclusion from the full protections of the First Amendment when the Supreme Court has not yet addressed the question").

In the present case, we, like the other state courts cited above, recognize that there may be reasonable arguments that the speech prohibited by § 28-311.08(3) should be unprotected. However, we do not find it to be within an established category, and we decline to recognize a new category of unprotected speech when the U.S. Supreme Court has not done so. To the extent the district court found the speech at issue to be unprotected, we do not endorse that finding. Given our analysis recited above, we assume the speech at issue to be protected by the First Amendment and proceed to analyze whether § 28-311.08(3) violates constitutional free speech protections.

### (d) Content Based or Content Neutral

[15-17] We have noted that while certain speech is unprotected and therefore may be proscribed without violating the First Amendment, "it does not follow that speech which is not proscribable by one of these enumerated categories cannot be restricted" and that "even a content-based restriction can be upheld if it satisfies the requisite standard of scrutiny." *State v. Grant*, 310 Neb. 700, 710, 968 N.W.2d 837, 848 (2022). The level of scrutiny applied to a statute that proscribes protected speech depends on whether the restriction is based on the content of the speech. A content-based restriction on speech is presumptively invalid and subject to strict scrutiny. *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011). A restriction that is content neutral is subject to an intermediate level of scrutiny. See *Village of Winslow v. Sheets*, 261 Neb. 203, 622 N.W.2d 595 (2001) (citing *United States v. O'Brien*,

391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968)). Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *State v. Grant, supra*.

Courts in other states that have considered challenges to statutes that, like § 28-311.08(3), criminalize distribution of nonconsensual intimate images have made different determinations regarding whether such statutes are content based. In *State v. Katz*, 179 N.E.3d 431, 455 (Ind. 2022), the Supreme Court of Indiana determined that the statute at issue was "plainly a content-based restriction" because it "criminalize[d] the distribution of an 'intimate image' without a person's consent" and defined "intimate image" as depictions of sexual conduct or of specific body parts including "buttocks, genitals, or the female breast." The court stated that the statute made a "facial distinction based on the message because it define[d] regulated speech by subject matter—sexual activity and nudity," and the statute did not "penalize all disclosure of visual material without another person's consent, it penalize[d] only th[at] subset of disclosed images." *Id*.

In *State v. VanBuren*, 210 Vt. 293, 214 A.3d 791 (2019), the majority applied strict scrutiny but did not explicitly state that the statute was content based. However, a dissenting judge in *State v. VanBuren* specifically stated that it was "clear that the statute criminalizes the distribution of images based on their content—'a visual image of an identifiable person who is nude or who is engaged in sexual conduct, without his or her consent.'" 210 Vt. at 329, 214 A.3d at 816 (Skoglund, J., dissenting).

By contrast, in *People v. Austin*, 2019 IL 123910, 155 N.E.3d 439, 440 Ill. Dec. 669 (2019), the Supreme Court of Illinois determined that the statute at issue was content neutral. The court reasoned that the statute "distinguishe[d] the dissemination of a sexual image not based on the content of the image itself but, rather, based on" the consent or lack of consent of the person depicted in the image, and the court

noted that the statute did not criminalize "the dissemination of the very same image obtained and distributed with consent." *Id*. at ¶ 49, 155 N.E.3d at 457, 440 Ill. Dec. at 687.

The Supreme Court of Minnesota in *State v. Casillas*, 952 N.W.2d 629, 641 (Minn. 2020), stated that it "need not determine whether [the statute at issue] is content-based or content-neutral because [it found] that the State ha[d] met its burden under the more searching strict scrutiny analysis." The court therefore assumed the statute was content based, applied strict scrutiny, and concluded the statute was constitutional.

In the present case, the district court found that § 28-311.08(3) was content neutral because it focused on the lack of consent, rather than the content of the image. The district court's reasoning finds support in *People v. Austin, supra*. We note, however, that § 28-311.08(3), like the statutes at issue in *State v. Katz, supra*, and *State v. Vanburen, supra*, applies only to images that depict specifically defined content.

But like the Minnesota court in *State v. Casillas, supra*, we determine that we need not decide whether § 28-311.08(3) is content based, because, as we discuss below, we determine that the statute survives strict scrutiny. To the extent the district court found the speech at issue to be content neutral, we do not endorse that finding. Given our analysis recited above, we assume for purposes of this analysis that the speech criminalized under § 28-311.08(3) is protected speech, as noted above, and that the statute is content based.

### (e) Strict Scrutiny

[18,19] A content-based restriction on protected speech is presumptively invalid and subject to strict scrutiny, and the State bears the burden to rebut that presumption. See *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011). Strict scrutiny requires the government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest. See *State ex rel. Bruning v. Gale*, 284 Neb. 257, 817 N.W.2d 768 (2012).

### (i) Compelling Interest

The State in this case does not explicitly articulate the compelling interest addressed by § 28-311.08(3) but instead cites to decisions by courts in other states that found a compelling interest in statutes prohibiting the nonconsensual dissemination of private intimate images. See, *State v. Katz*, 179 N.E.3d 431, 458 (Ind. 2022) (finding compelling interest based on "potential serious harms that accompany" prohibited conduct and "substantial invasion of privacy" exhibited by such conduct, and State's "well-recognized authority to safeguard its citizens' health and safety"); *State v. Casillas*, 952 N.W.2d 629, 642 (Minn. 2020) (finding compelling interest based on "broad and direct threat to [the State's] citizens' health and safety" resulting from conduct criminalized by statute); *State v. VanBuren*, 210 Vt. 293, 318, 214 A.3d 791, 808 (2019) (finding compelling interest based on "relatively low constitutional significance of speech relating to purely private matters, evidence of potentially severe harm to individuals arising from nonconsensual publication of intimate depictions of them, and a litany of analogous restrictions on speech that are generally viewed as uncontroversial and fully consistent with the First Amendment").

We agree with the reasoning of these courts and adopt it here. As set forth in greater depth by those courts, the State has a compelling interest in protecting the personal privacy of its citizens, and the conduct criminalized under § 28-311.08(3) constitutes a significant invasion of privacy and presents the potential of significant harm to the victims of such conduct. Furthermore, speech regarding purely private matters does not present the level of free speech concern as speech regarding public matters. We determine that the interest sought to be addressed by § 28-311.08(3) is compelling.

### (ii) Narrowly Tailored

We next consider whether § 28-311.08(3) is narrowly tailored to achieve the compelling interest. The State asserts

that § 28-311.08(3) is narrowly tailored because the statute requires a lack of the victim's consent, both when the image or video is created and when it is distributed; the statute applies only to a clearly defined set of images that implicate privacy concerns; and the statute requires that distribution be done knowingly and intentionally.

Courts in other states applying a strict scrutiny analysis to statutes that, like § 28-311.08(3), criminalize nonconsensual distribution of images have found the statutes to be narrowly tailored to achieve a compelling interest. See, *State v. Katz*, 179 N.E.3d at 459 (finding statute narrowly tailored based on "its many limiting definitions and exceptions," including requiring defendant's knowledge of lack of consent); *State v. Casillas*, 952 N.W.2d at 643, 644 (finding statute narrowly tailored and noting that statute "explicitly defined" the "type of image that is criminalized," requirement that defendant intentionally disseminate image, several enumerated exceptions, requirement that defendant act without consent, and that "statute only encompasses private speech"); *State v. VanBuren*, 210 Vt. at 323, 214 A.3d at 812 (finding statute narrowly tailored based in part on "limiting [statute] to a confined class of content" and "a rigorous intent element that encompasses the nonconsent requirement").

We note, as Zitterkopf contends, that there are differences between § 28-311.08(3) and the statutes at issue in other states. For example, some statutes in other states require an intent to threaten or to harm the victim, and some statutes provide specific exclusions to protect free speech concerns, such as matters of public interest. We also note that some statutes in other states require a lack of consent to distribution only and do not necessarily require that an image be created without consent. Nonetheless, we recognize that narrow tailoring can be achieved in different ways, and we therefore consider whether § 28-311.08(3) is narrowly tailored based on the elements that are included in the statute, rather than on elements that might have been but were not included.

We determine that § 28-311.08(3) is narrowly tailored to the compelling interest of protecting individual privacy. The statute limits its reach to images that show the intimate area of a person. For purposes of § 28-311.08, the term "intimate area" is defined in subsection (8)(a) as "the naked or undergarment-clad genitalia, pubic area, buttocks, or female breast of an individual." Section 28-311.08(3) is also narrowly tailored because it requires a lack of consent by the victim at two levels—when the image or video is created and again when the image or video is distributed or otherwise made public. Section 28-311.08(3) requires proof that the defendant knew of the lack of consent to both the creation and the distribution of the image or video, and it requires proof that the defendant intentionally distributed the image knowing of the victim's lack of consent to both the creation and the distribution of the image or video.

Zitterkopf argues regarding intent that the statute is not narrowly tailored because it does not require a specific intent to intimidate, threaten, or harass the victim. But we do not think that the lack of such an intent element is fatal. The compelling interest behind the statute—protection of individual privacy interests—does not invariably require an intent to intimidate, threaten, or harass, and the Legislature could have determined that the harm of distribution of intimate images is the same regardless of the defendant's reason for distribution. We determine that the statutory provisions that the defendant intentionally distributed the image knowing the victim did not consent to either the creation or the distribution of the image is sufficient for narrow tailoring.

[20] Because Zitterkopf does not argue that § 28-311.08(3) is unconstitutional in every application and instead asserts an overbreadth challenge, we must consider whether § 28-311.08(3) is substantially overbroad and threatens significant protected speech. When a party does not claim that a challenged law has no valid application, a facial challenge must establish that a substantial number of the law's applications

are unconstitutional in relation to its legitimate sweep. *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011). If shown, this substantial overbreadth invalidates all enforcement of the law. *Id*. Conversely, the attack fails if the challenger fails to meet this burden. *Id*.

Overbreadth analysis is inherently closely related to the determination of whether the statute is narrowly tailored to achieve the State's compelling interest. The factors noted above show that § 28-311.08(3) is narrowly tailored to achieve a compelling interest and that therefore, the legitimate sweep of the statute survives strict scrutiny.

Zitterkopf argues, however, that § 28-311.08(3) is substantially overbroad because it applies to a substantial number of fact patterns that are not within the legitimate sweep of the statute. Zitterkopf contends that § 28-311.08(3) "sweeps in several legitimate communications, including artistic photography, images and video taken or discovered by journalists, and any number of innocent images and videos taken of nude or underwear-clad babies and toddlers, which are then shared with family members." Brief for appellant at 11.

Without addressing the specifics of all of Zitterkopf's examples, we note that it is not entirely clear that all examples meet the statutory requirements. The examples may present issues of statutory interpretation, such as how consent requirements apply to babies and toddlers; whether the knowledge requirement applies when an image or video is "discovered," and it may or may not be clear whether the image or video was created with consent; and whether specific images or videos of intimate areas are matters of public concern. Furthermore, it is not clear that each of the examples given by Zitterkopf involves images or videos that are not legitimately within the scope of the State's compelling interest in protecting privacy of the individuals depicted, including individuals under a certain age or individuals who find themselves involved in a news story.

"Invalidation for overbreadth is 'strong medicine' that has been employed 'sparingly and only as a last resort.'" *State v. Katz*, 179 N.E.3d 431, 460 (Ind. 2022) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)). The "'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Id.* (quoting *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)).

We reject Zitterkopf's argument that § 28-311.08(3) is substantially overbroad based on the examples given. To the extent that some examples provided by Zitterkopf might implicate First Amendment concerns, such concerns may be addressed through challenges to the statute as applied in the event the State prosecutes a case involving such circumstances. But we do not think that the potential of some questionable applications of the statute establishes that, at this time, "a substantial number of the law's applications are unconstitutional in relation to its legitimate sweep." See *State v. Kass*, 281 Neb. at 900, 799 N.W.2d at 689.

We determine that § 28-311.08(3) is narrowly tailored to achieve a compelling interest and that therefore, it survives strict scrutiny under First Amendment analysis. Although our reasoning differs from that of the district court, we conclude that the district court did not err when it rejected Zitterkopf's constitutional challenge and overruled his motion to quash.

## 2. Ineffective Assistance of Trial Counsel Raised by New Counsel on Appeal

[21] Zitterkopf makes two claims of ineffective assistance of trial counsel. On direct appeal, Zitterkopf has new counsel who was not his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant

or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023).

[22,23] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

[24] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

[25-27] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dap, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

#### (a) Claim Of Ineffective Assistance of Counsel
#### Related to Soucie's Testimony
#### is Without Merit

Zitterkopf first claims that his trial counsel's performance was deficient because counsel failed to object based on hearsay to Soucie's testimony regarding out-of-court statements made by L.E. to the effect that she did not consent to the video recording or the distribution of the images. We conclude that the record on direct appeal shows that Zitterkopf would not be able to show prejudice as a matter of law in connection with this claim of ineffective assistance of counsel.

Applying the standards we have recited above to Zitterkopf's claim that his trial counsel was ineffective for failing to make a hearsay objection to Soucie's testimony, we determine that the record on direct appeal shows that Zitterkopf would not be able to establish prejudice as a matter of law. Zitterkopf would not be able to demonstrate a reasonable probability that but for counsel's failure to object to portions of Soucie's testimony, the result of the proceeding would have been different. First, it was likely that any such objection would have been overruled because Soucie's testimony regarding L.E.'s statements was offered to explain steps taken in the investigation of Zitterkopf. See *State v. Anthony*, 316 Neb. 308, 330, 4 N.W.3d 393, 411 (2024) ("statements made to law enforcement to explain the steps taken in an investigation of a defendant, rather than to prove the truth of the matter asserted, are generally admissible as nonhearsay so long as the probative value of the evidence's nonhearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by an impermissible hearsay use of the statements"). Second, L.E. testified at trial, her testimony was consistent with Soucie's testimony regarding her statements to him, her testimony was subjected to cross-examination, and her testimony supported elements necessary to convict Zitterkopf.

The record on direct appeal is sufficient for us to determine that Zitterkopf would not be able to establish that trial

counsel's failure to object to Soucie's testimony would have prejudiced Zitterkopf as a matter of law, and, therefore, we reject Zitterkopf's claim of ineffective assistance of trial counsel related to Soucie's testimony.

### (b) Claim That Trial Counsel Provided Ineffective Assistance When Counsel Failed to Present Testimony Cannot be Reviewed on Direct Appeal

Zitterkopf's second claim of ineffective assistance of counsel is that his trial counsel provided ineffective assistance when counsel failed to present testimony by Zitterkopf and by Zitterkopf's cousin, which testimony Zitterkopf alleges would have supported a finding that L.E. consented to the video recording. Applying the standards set forth above in connection with Zitterkopf's claims of ineffective assistance of trial counsel, we conclude that the record on direct appeal is not sufficient to review this claim.

The claim relies on purported testimony by Zitterkopf and by his cousin that allegedly would have disputed L.E.'s testimony that she did not consent to the video recording. The substance of the purported testimony is not in the record on direct appeal, and resolution of this claim could require consideration of issues such as the substance of the potential testimony, the effect such testimony might have had on the result of the trial, and whether counsel's failure to present such testimony was part of a reasonable trial strategy.

We determine that the record on direct appeal is not sufficient to review Zitterkopf's claim of ineffective assistance of trial counsel related to alleged potential testimony by himself and by his cousin.

### VI. CONCLUSION

Although our reasoning differs, we conclude that the district court did not err when it rejected Zitterkopf's First Amendment challenge to § 28-311.08(3) and when it therefore overruled Zitterkopf's motion to quash. We further reject

Zitterkopf's claim of ineffective assistance of trial counsel relating to Soucie's testimony, and we determine that the record on direct appeal is not sufficient to consider Zitterkopf's claim of ineffective assistance of trial counsel regarding potential testimony by Zitterkopf and by his cousin. We therefore affirm Zitterkopf's conviction.

Affirmed.